1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*US Court Agency (w/ fee reg.)* *(handwritten in left margin)*

FILED _____ ENTERED
LODGED_____ RECEIVED

AUG 4 2009 DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

BECKER FAMILY BUILDERS CO-
PLAINTIFFS GROUP,

                            Plaintiffs,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for
WESTSOUND BANK; and WSB FINANCIAL
GROUP, INC.,

                            Defendants.

NO. CV9 5477 KLS

FEDERAL DEPOSIT INSURANCE
CORPORATION RECEIVER'S NOTICE
OF REMOVAL

ORIGINAL

**TO:    THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON SEATTLE DIVISION:**

PLEASE TAKE NOTICE that the Federal Deposit Insurance Corporation, as Receiver

for Westsound Bank ("FDIC-R"), by and through its attorneys of record, Garvey Schubert

Barer, hereby removes to this Court the state court action described below pursuant to 12

U.S.C. § 1819(b)(2)(B).

I.    **BACKGROUND**

1.    The Federal Deposit Insurance Corporation ("FDIC") is a corporation organized

under the laws of the United States of America. 12 U.S.C. § 1811, et seq.  The FDIC appears in

FEDERAL DEPOSIT INSURANCE CORPORATION
RECEIVER'S NOTICE OF REMOVAL - 1
SEA_DOCS:933345.1 [30351-01900]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1   this action in its receivership capacity, under 12 U.S.C. § 1821(c). The FDIC has the power to

2   sue and be sued, complain and defend in any court of law or equity, State or Federal. 12 U.S.C.

3   § 1819(a). Cases involving the FDIC should generally be heard in and decided by the federal

4   courts. *FDIC v. Nichols*, 885 F.2d 633, 636 (9th Cir. 1989).

5          2.      On Friday, May 8, 2009, Westsound Bank, Bremerton, Washington, was closed

6   by the Washington Department of Financial Institutions ("WDFI"). The FDIC was appointed

7   Receiver by WDFI on May 8, 2009. The FDIC-R accepted the appointment as Receiver

8   pursuant to 12 U.S.C. §1821(c)(3). Pursuant to 12 U.S.C. §1821(d)(2), the FDIC-R by

9   appointment, and by operation of law, succeeds to "all rights, titles, powers, and privileges" of

10  Westsound Bank.

11         3.      The Complaint in this action was filed on March 18, 2009 in Kitsap County

12  Superior Court as Case No. 09-2-00662-0.

13         4.      Attached hereto and marked as Exhibits A-G are true and correct copies of the

14  following:

15         Exhibit A – Summons and Complaint

16         Exhibit B – Order Denying Motion to Consolidate Actions

17         Exhibit C – Memorandum Opinion Granting Motion to Dismiss in Part and Denying
                      Motion to Dismiss in Part
18
19         Exhibit D – Motion to Reconsider Order Granting Partial Relief on Plaintiff's 12(b)(6)
                      Motion
20
21         Exhibit E – Westsound Bank's Answer to Complaint

22         Exhibit F – WSB Financial Group, Inc.'s Answer to Complaint

23         Exhibit G – Order Granting Motion to Substitute FDIC Receiver for Westsound Bank

           5.      On July 13, 2009, the FDIC-R filed a motion for an order substituting the FDIC-
24
    R as the real party in interest in place of Westsound Bank. On July 24, 2009, the Honorable
25
    Russell W. Hartman of the Kitsap County Superior Court entered an Order granting FDIC-R's
26

FEDERAL DEPOSIT INSURANCE CORPORATION
RECEIVER'S NOTICE OF REMOVAL - 2
SEA_DOCS:933345.1 [30351-01900]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1    Motion to Substitute Party ("ORDER").

2    **II.    JURISDICTION AND VENUE**

3         6.    This is a civil action of which this Court has original subject matter jurisdiction,

4    and is an action that may be removed to this Court by the FDIC-R pursuant to the provisions of

5    12 USC §1819(b)(2), which reads in pertinent part as follows:

6                   (A)    IN GENERAL. – Except as provided in subparagraph (D), all suits

7         of a civil nature at common law or in equity to which the Corporation, in any capacity,

8         is a party shall be deemed to arise under the laws of the United States.

9                   (B)    REMOVAL. - Except as provided in subparagraph (D), the

10        Corporation may, without bond or security, remove any action, suit, or proceeding from

11        a state court to the appropriate United States District Court before the end of the 90-day

12        period beginning on the date the action, suit, or proceeding is filed against the

13        Corporation or the Corporation is substituted as a party.

14        . . .

15        7.    Westsound Bank was a state chartered bank with deposits insured by the FDIC.

16   The disposition of this action raises the interpretation of federal laws in the defense of claims

17   asserted against the FDIC-R.   FDIC-R contends, without limitation, that the administrative

18   claims process applicable to this lawsuit, to be followed by the plaintiffs and FDIC-R is set

19   forth in 12 USC §§ 1821(d)(3) – (13), and that to decide the case, this court must interpret

20   federal law.  The FDIC-R further contends, without limitation, that the provisions of 12 USC §

21   1823(e) are implicated by the allegations in the plaintiff's complaint against the FDIC-R, and

22   that to decide the case, this court must interpret federal law.

23        8.    Westsound Bank's principal place of business was in Bremerton, Washington.

24   Venue for this action is therefore only within the jurisdiction of the United States District Court

25   wherein Westsound Bank's principal place of business was located, which is the United States

26   District Court for the Western District of Washington Seattle Division, or the United States

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1  District Court, District of Columbia.  12 U.S.C. § 1821(d)(6)(A).  Thus, this District and

2  Division is the proper venue for removal.

3  **III.     TIMELINESS OF REMOVAL**

4       9.  ·      Removal must be effected by the FDIC-R "before the end of the 90-day period

5  beginning on the date . . . the Corporation is substituted as a party."  12 U.S.C. § 1819(b)(2)(B).

6  Pursuant to the ORDER, FDIC-R was substituted as the real party in interest in place of

7  Westsound Bank on July 24, 2009.  FDIC-R has ninety (90) days from entry of the ORDER in

8  this matter (i.e. until October 22, 2009) to remove this case to the federal court.  This removal

9  is therefore timely.

10

11       DATED this ___4ᵗʰ___ day of August, 2009.

12                                    GARVEY SCHUBERT BARER

13

14                             By _____

15                                Bruce A. McDermott, WSBA #18988
                                   Attorneys for Federal Deposit Insurance
16                                 Corporation, acting as Receiver for
                                   Westsound Bank
17                                 1191 Second Avenue, 18ᵗʰ Floor
                                   Seattle, WA 98101
18                                 206-464-3939

19

20

21

22

23

24

25

26

FEDERAL DEPOSIT INSURANCE CORPORATION
RECEIVER'S NOTICE OF REMOVAL - 4
SEA_DOCS:933345.1 [30351-01900]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1

## CERTIFICATE OF SERVICE

2    I, Karen Shelton, certify under penalty of perjury under the laws of the State of Washington

3    that, on August __4__, 2009, I caused to be served on the person(s) listed below in the manner

4    shown for each:

5    FEDERAL DEPOSIT INSURANCE CORPORATION RECEIVER'S NOTICE OF

6    REMOVAL

7

8    <u>Counsel for Plaintiffs</u>               <u>Counsel for WSB Financial Group, Inc.</u>
     John Phillip Abrams                    Thomas A. Sterken
9    The Abrams Firm                        Keller Rohrback
     PO Box 1494                            1201 Third Avenue, Suite 3200
10   Gig Harbor, WA  98335                  Seattle, WA  98101
     Fax: 253-649-0223                      BY LEGAL MESSENGER
11   lawjpa@comcast.net
     BY 1ˢᵀ CLASS MAIL, FACSIMILE and
12   E-MAIL

13   ☒    United States Mail, First Class

14   ☒    By Legal Messenger

15   ☒    By Facsimile

16   ☒    By E-Mail

17   Dated at Seattle, Washington this __4th__ day of August, 2009.

18

19                                    _Karen Shelton_____
                                         Karen Shelton
20

21

22

23

24

25

26

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

CERTIFICATE OF SERVICE - 1

# EXHIBIT A

FILED
KITSAP COUNTY CLERK

2009 MAR 18  PM 4: 05

DAVID W. PETERSON

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KITSAP

BECKER FAMILY BUILDERS
CO-PLAINTIFFS GROUP,

                Plaintiff,

      v.

WESTSOUND BANK, and
WSB FINANCIAL GROUP, INC.,

             Defendant.

No.   09 2 00662 0

**SUMMONS (20 days)**

TO THE DEFENDANTS:  WESTSOUND BANK, and WSB FINANCIAL GROUP, INC.,

A lawsuit has been started against you in the above-entitled Court by the above-named Plaintiff as detailed in the attached Complaint. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the undersigned attorneys for the plaintiff within twenty (20) days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned attorneys, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the Court.  If you do so, the demand must be in writing and must be served upon the person signing this summons.  Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court or the service on you of this summons and complaint will be void.

SUMMONS - 1

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

1   If you wish to seek the advice of an attorney in this matter, you should do so promptly so that
2   your written response, if any, may be served on time.

3   This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of
4   Washington.

5   DATED this _18th_ day of February 2009 at Port Orchard, Washington.

6

7

8                                John Phillip Abrams, WSBA# 31068
9                                Attorney for Plaintiff
                                 PO 1494 Gig Harbor, WA 98335
10                               Telephone: (253) 222-3712

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SUMMONS - 2                                              THE ABRAMS FIRM
                                                         John Phillip Abrams
                                                      PO 1494 Gig Harbor, WA 98335
                                                    (253) 222-3712 - Facsimile: 649-0223

RECEIVED FOR FILING
KITSAP COUNTY CLERK

MAR 1 8 2009

DAVID W. PETERSON

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KITSAP

BECKER FAMILY BUILDERS
CO-PLAINTIFFS GROUP,

               Plaintiff,

v.

WESTSOUND BANK, and
WSB FINANCIAL GROUP, INC.,

               Defendant.

No.   09 2 00662 0

COMPLAINT FOR DAMAGES FOR
NEGLIGENT MISREPRESENTATION,
VIOLATIONS OF THE UNFAIR BUSINESS
PRACTICES-CONSUMER PROTECTION ACT,
BREACH OF CONTRACT, PROMISSORY
ESTOPPEL, AND UNJUST ENRICHMENT

COMES NOW the Becker Family Builders Co-Plaintiffs Group in the above-entitled action by and

through their attorney of record, John Phillip Abrams, to allege as follows:

## I. PARTIES AND JURISDICTION

1.1     The Plaintiff, BECKER FAMILY BUILDERS CO-PLAINTIFFS GROUP consists of the

Co-Plaintiffs: JERRY BECKER and MARY ANN BECKER, individually, and JMB ENTERPRISES;

RICHARD SANDERS and SHELLY SANDERS, individually, and SANDERS ENTERPRISES, INC.;

MATT TEMPLETON and CHER TEMPLETON, individually, and CREATIVE STRUCTURES &

DESIGN — who are all related; and, family-by-friendship and years of trusted business — with the

Co-Plaintiffs: JOSEPH CHRISTMAN and KRISTIN CHRISTMAN, individually, and JKC

PROPERTIES, LLC; and, ROBERT BURLINGAME & BURLINGAME CONSTRUCTION. All Co-

Plaintiffs reside in Kitsap County. The "Becker Family Builders" (herein in the aggregate, unless

so specified) entered into certain loan contracts with Defendant in Kitsap County, Washington.

BECKER FAMILY BUILDERS COMPLAINT - 1

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2536490223

1.2    Defendant WESTSOUND BANK ("Westsound", "Lender", or "the Bank" herein, which refers collectively and/or vicariously to the parent corporation, Defendant WSB FINANCIAL GROUP (and all branches and subsidiaries dealing with the Plaintiffs herein), is a State of Washington Bank, (Federally Insured and State & Federally Regulated) that at all times mentioned herein, was performing construction loan lending services to the Plaintiffs herein, and all such contracts were negotiated in Kitsap County, Washington where the Defendant maintains various facilities.

1.3    This matter involves harm stemming from construction loans and other associated agreements formed in, and between residents of, Kitsap County, Washington. Accordingly, the Superior Court of Washington, venued in Kitsap County has proper subject matter jurisdiction and personal jurisdiction over all parties in this matter.

1.4    This matter is Pled with Particularity (with Representative Facts for anticipated Joinder), as it involves allegations of complex negligent misrepresentations causing substantial harm.

## II.  SUMMARY OF FACTS

2.1    Becker Family Builders are comprised of family relations and business friends.

2.2    This Family of Builders had a long history of successful loan contracts with Westsound.

2.3    In fact, some of the family were construction loan clients since the Bank's initial formation.

2.4    For many years, Westsound Bank had provided loan proceeds to all contractor clients known to Plaintiffs (including all Witnesses thus far) under well-established rules.

2.5    The Bank's procedures for 'Funding Draws' had always paid a *percentage of completion* of the set dollar amount per the agreed 'Draw Schedule' for a given phase of construction (ex: Roofing)

BECKER FAMILY BUILDERS COMPLAINT - 2

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2.6    Thus, the builder/loan client would receive a check for the completed percentage portion of the predetermined total for a given construction phase (such as a home's 'Siding: 80%' complete).

2.7    The Builder would merely call the Bank for an inspection and, with years of consistency the Bank's procedure provided Draw Funding in: 1 to 2 business days.

2.8    The 'Draw Payment Procedure' was to simply identify the percentage of construction done (ex: 'Roofing: 60%; Siding: 20%'), and the Bank could make a site visit to assure the percentage of work was substantially complete, and thereupon approve the Draw. *See, Exhibit "A" attached hereto.*

2.9    However in 2007, Westsound Bank became subject to Federal Auditor Regulation, and then unilaterally established various inflexible new Funding rules, materially altering loan terms.

2.10    An example was the Bank's new 'Draw Funding' requirement to force contractors to obtain 'revised' Labor & Materials bids from all subcontractors & suppliers used.

2.11    Previously, Draw Funding paid a percentage amount of the *phase of construction's* total amount on the 'Draw Schedule' (agreed-to at the outset of each loan).

2.12    Another unfair prerequisite to funding was to prevent the Lendee from working on their own 'spec' home, stating that it was not allowed under the new rules because of their "Grantee" status on the Deed— this is indefensible logic, as Plaintiff was a licensed Washington contractor.

2.13    Westsound Bank's new compulsory Draw restrictions (discussed in detail herein) were a complete breakdown of the procedures bargained-for at contract assent.

2.14    The bargained-for and long-established Funding rules were fair and honored, but due to internal regulatory problems Westsound did not comply, starting a deceitful meshwork of evolving and unjustifiable new rules, new procedures, and new restrictions to Funding.

2.15    The very subsistence of the economic engine that builds America's homes is dependent upon good faith in funding loans to assure homes are completed timely for sale; and, Defendant's failure to provide vital, time-critical funding caused financial devastation to a Family of Builders.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2.16    Westsound cannot fairly deny it *should have known* that building is Funding-dependant.

2.17    The failure to provide 'Funding' (Includes: 'Draws'; promised 'Extensions' or 'Refinances') breached the Bank's preexisting duties with foreseeable consequences.

2.18    Every Contract harbors inherent and inextricable *Duties of Good Faith & Fair Dealing*, and here the Lender's new practices destroyed its very purpose: to fund approved loans in Good Faith.

2.19    New rules to obtain promised Funding, established a pattern & practice that *de-facto* deceived the Plaintiffs, who were unable to comply with an evolving meshwork of rigid requirements that prevented some builders from completing their homes.

2.20    Established procedures and customary practices were unilaterally and materially altered, and by such harsh methods that the Bank breached its fiduciary duties, as it completely frustrated the Plaintiffs' means to perform [*Time/Funding-Sensitive Construction Project Management*].

2.21    Defendant's acts contravened the public interest by creating a pattern of deceitful practices that ultimately caused the Becker Family Builders substantial business losses and life-impacting damages (including Personal Injuries), all to be fully proven at trial.

PRE-EXISTING DUTIES

2.22    Defendant legitimately procured loan obligations from the Plaintiffs based on representations of over 5 years of a pattern & practice of consistent lending terms.

2.23    Defendant changed its procedures (altering vital terms of agreement) just after it became subject to Federal Audits. See, 'Extensions', 'Refinances', and 'Draw' Funding at Sections III, IV & V, pled in particularity.

2.24    The lending practices that were promised and represented in good faith at the point of securing the Plaintiffs' Contract Assent, thereby bound the Defendant with a consequent duty to uphold such terms of agreement that were consistently promised and historically performed.

BECKER FAMILY BUILDERS COMPLAINT - 4

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

INTEREST PAYMENTS

2.25    The Becker Family (as other similarly situated builders) enriched Westsound Bank with profits in the form of interest, financed interest, and varied loan fees over many years.

2.26    Prior to the 2007 substantial meshwork of Unilateral Changes to Funding rules, the terms of agreement had been definitively established by long-standing Bank practices.

2.27    IT IS A PATENT INJUSTICE that the Bank was enriched by huge interest collections and cross-collateralized Family homes, while the Bank simultaneously and unlawfully withheld vital Funding without legally cognizable excuse, directly causing the co-Plaintiffs' substantial harm.

RETALIATORY ACTS TO "WHISTLE BLOWER"

2.28    Plaintiff Jerry Becker was deeply concerned for his family & friends and their livelihood as builders, which were in dire jeopardy due to Westsound Bank's refusal to honor its commitments.

2.29    Mr. Becker contacted the Washington State Banking Commission to seek clarification, and his matter was addressed by the Director of that Washington State Agency, and thereafter Mr. Becker, and the entire Becker Family of Builders (Plaintiffs herein) were retaliated against (good faith argument for application) *for merely reporting facts that were true to a State Agency,* whether or not such facts constituted fiduciary breaches under State Banking regulations.

2.30    The Becker Family Builders experienced *Disparate Treatment* after the appropriate regulatory agency reporting, and were forced by an increased intensity of the Bank's inexcusable delays (and/or complete failures to provide funding owed) to *self-fund* their business operations.

2.31    The Plaintiffs as an aggregate were forced to borrow and make personal cash contributions to satisfy subcontractors, employees, vendors & suppliers.

2.32    Many of the Plaintiffs herein were forced to resort to funding their business building projects with existing credit cards/other credit to stave-off financial demise.

BECKER FAMILY BUILDERS COMPLAINT - 5

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2.33    Such capital infusions by the Plaintiffs were emergency and temporary in nature; however, Defendant failed to mitigate such harm appearing with great consistency in the Plaintiffs' Fact Memoranda as, openly and repeatedly disclosed to Westsound, and specifically how the Bank's noncompliance would cause financial ruin of their businesses and livelihood.

2.34    Westsound Bank's loan performance changed after regulations, but <u>after</u> Mr. Becker's visit to State Banking authorities, it may be shown that the Bank's arbitrary rulemaking & enforcement disparately impacted Becker Family Builders to infer Retaliatory Animus to a Whistle Blower.

## III.    REPRESENTATIONS AND INDUCEMENT FACTS

<u>PRIOR LOAN PACKAGES—REPRESENTATIONS</u>

3.1    As experts, Westsound employees were always relied upon by Plaintiffs, and performed well for the Plaintiffs for many years.

3.2    Prior to the Defendant's federal regulation, construction loan packages included related business operating costs (from contractor's insurance to a variety of approved costs)—all of which could be 'wrapped' into Draw or separate line items in the lending package.

<u>LOAN 'EXTENSIONS' AND REFINANCE PROMISES</u>

3.3    Although there were agreed fees and costs (interest loads), the Plaintiffs were consistently and assuredly guaranteed that Westsound would always offer 'Loan Extensions' until the project/credit line was closed out.

3.4    Some Plaintiffs were promised grace periods or refinance packages 'should it be necessary'.

3.5    The Becker Family Builders were assured by both Westsound Executives and Loan Officers that such financially sophisticated support to Builder Clients was good for Westsound.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

3.6     Apart from disclosing certain Extension-related fees and interest, Westsound assured Plaintiffs herein that the Bank could not afford 'Bad Assets on its books' (so-called "Toxic Assets") and would 'do anything to avoid foreclosures.'

3.7     Plaintiffs were advised that it was in Westsound's financial interest to keep making loans and assure their builders had ample funding options at their disposal.

3.8     Westsound employees and executives alike, assured certain Plaintiffs herein that Westsound would do everything in the bank's power to get builders funding as required to assure they would not be foreclosed (i.e. to avoid toxic assets on the bank's balance sheet).

3.9     The Plaintiffs herein were frequently assured by past practices and post-regulation representations (noting the use demi-quotes herein denotes similar text often to multiple Plaintiffs and/or Fact Witnesses, which shall be the subject of discovery/trial testimony ), as witnessed:

> Extensions [never in writing past or present] consistently promised because 'Westsound will take care of you' and 'if you need a loan extension, Westsound's answer will always be yes' [believed true] or, 'absolutely'.

3.10.    Such broad and previously honored guarantees of support funding were a *bargained-for* feature of all of the Becker Family Builders' contracts.

3.11.    But, under the "new rules" (per Westsound) the same loans (in good standing), were now to be re-Appraised and re-visited with new financials.

FINAL LOAN PACKAGES—REPRESENTATIONS—CONSEQUENCE OF BREACH

3.12     Without exception the Final Loan Packages contained at least one or more element of Paragraphs 3.13 and 3.14 below, regarding such assurances and/or guarantees that were commonly promised and had been subsequently performed in prior loans.

3.13     It was common when the Plaintiffs' loans were nearing maturity:

> 'if the loan expires,' it is 'no big deal' because Westsound consistently used similar phrases to the exact phrase of: 'we will take care of you, we're just trying to get organized' [from the mass-firing and regulatory activities].

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

3.14    Plaintiffs were frequently told to:

'not worry' and just simply, 'keep doing what you are doing' [construction], and allow us or 'trust us' [Westsound] 'to handle the banking business' [often causing Builders to self-fund, only later to be deprived promised funding].

3.15    The above tactic is significant because this 'advice' caused Builders to put dwindling personal resources into their home projects (leaving more substantial and saleable homes to the Bank upon foreclosure) and all Plaintiffs herein were refused Funding per certain promises.

3.16    Without exception, all the Becker Family Builders experienced breaches in the Defendant's Loan Funding Performance after regulation, which almost invariably was on an exacerbating and worsening trend — ultimately culminating in destroying their businesses, and adversely impacting the welfare and health of both the builders and their families.

3.17    Infliction of Substantial Harm and Medical Manifestations — all were directly and proximately caused by the Bank's negligence, as it callously ignored openly disclosed and highly specific warnings of catastrophic loss / health consequences that could (and later did) result from Westsound Bank's continuing pattern of deceitful acts toward the Family Members.

## IV.    NEGLIGENT PERFORMANCE FACTS

NEGLIGENCE IN HIRING —NEW WESTSOUND REPRESENTATIVES—INEXCUSEABLE NEGLECT

4.1    At the time of Westsound Bank's *mass-firing* of the lending department employees (30+ employs were terminated surrounding the time of Auditing), the workforce expertise of some 30 professionals were subsequently replaced by 1 to 2 inexperienced points-of-contact.

4.2    After Federal Regulation loan service eroded (competence <u>and</u> access), just when the Bank began to make complex changes to vital terms concerning 'Draw Funding', that were implemented by low-level staff (Previous 'Draw Experts' were terminated and low-level staffers, "Amber & Kim" were the Builders only contacts, barring the rare contact with their boss "Sherry".

4.3.    For example, delays were created by an elaborate hybrid between:

'no one is available;' or, 'she/he is out and will get back to you' [and almost invariably does not]; 'I am trying to learn this business' [often from the sole decision-maker provided to all the Plaintiffs herein at a given time]; -or-, the Bank's 'paperwork is screwed up and I am trying to filter out mistakes;' and the dreaded, 'let me re-route your call/question' [to an answering machine without a likelihood of response].

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

4.4    For 'Extensions' the once sole loan representative ("Rene") was virtually always unavailable at critical Funding times, and Rene along with a later contact ("Rodrigo") both made frequent assurances that the Bank was honoring their Extension or Refinance.

4.5    After the absence of former and once sole department head "Rene", then "Rodrigo" became the sole contact at one point for Westsound's construction lending department, and in the end, Rodrigo and Rene both had left the Plaintiffs herein with extensive and precisely described verbal promises, assurances, and/or advisements—almost all of which were eventually claimed by Westsound to be beyond their claimed authority and/or inaccurate.

4.6    In several of the Plaintiffs' specific fact pattern memoranda, it has been discovered that the dates of 'Unavailability' of both new [post-regulation] Westsound Employees, Rene and Rodrigo, with great consistency fell upon the dates leading up to promised 'Loan Extensions' or specific restructured loan packages [none of which occurred as represented].

4.7    And after such ill-timed departures, Westsound invariably added new questions, new prerequisites, and always a series of delays that led to noncompliance with prior-agreed terms.

4.8    A partial list of the Defendant's excuses for nonperformance (when reachable at the Bank or upon finally returning the mounting numbers of calls), is as follows:

> 'on track' and 'don't worry'; or, 'swamped' and 'not looked at it yet' and 'we'll get back to you' (and almost invariably, do not); or, 'Audits have backed up all our paperwork,' and the most problematic promises stating 'No problem with your Extension' and 'If you default it's because of us, and we're not going to let that happen; it's just paper'

**NEGLIGENT GRANTS OF AUTHORITY—INCOMPETENCE—INEXCUSEABLE NEGLECT**

4.9    Multiple Plaintiffs herein faced critical funding deadlines that were promised by prior Westsound decision-makers both at contract assent, and initial representations of Rene and/or Rodrigo who were the construction client's only contacts at a given point.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

4.10    Westsound's Employees created an evolving set of compulsory "rules" [claimed to be set by the Federal Auditors] that unilaterally forced new odious prerequisites in order for the Defendant to perform its preexisting Funding duties.

4.11    In the end, the Westsound Employees confessed to multiple Plaintiffs herein that they lacked the authority they had previously thought they had, and Employee Rodrigo further asked for sympathy being only a former "credit card" industry employee with expertise limited to that realm, and "new" at lending practices (without prior expertise in construction loan packages), yet Defendant Westsound used him in [Bank created]exigent times as their Sole Representative.

**NEW 'DRAW' RULES—TACTICS AND SCHEMES—PATTERN OF DECEIT**
[also see 'Draw' Funding Representative Facts at Section V herein]

SITE INSPECTION DELAY TACTIC

4.12.    A new *delay-in-funding tactic* was when the Bank terminated its in-house 'Draw Expert' and hired-out [at Plaintiffs' expense] a private provider to inspect sites on only one (1) day per month (the prior practice was within 1-2 business days upon request of the building client).

4.13.    This delay tactic would cause abnormal results such as building phases that are 90%-100% completed (like, Foundation: 90%; Framing Supplies 100%) a few days after [the once monthly] inspection day, which would now require another 30 days for *Artificially Delayed Funding*.

4.14.    As a consequence, Westsound's tactic would jam-up all other phases of the building project and cause havoc to the schedules of multi-phases of subcontractors.

4.15.    Through it all, the Bank charged Interest, and the Lendee Plaintiffs were forced to either self-fund -or- self-destruct, because the main prerequisite to building America's new homes is: *Good Faith Compliance of Banking Institutions.*

BECKER FAMILY BUILDERS COMPLAINT - 10

**THE ABRAMS FIRM**
**John Phillip Abrams**
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

**ABSENCE OF RECORDS—NEGLIGENT CONCEALMENT**

4.16    Westsound refused multiple attempts (by multiple Plaintiffs herein) to provide copies of documents claimed in existence or claimed to be signed by Plaintiffs (noncompliance by absence).

4.17    Because of the Bank's failure to honor multiple requests for certain records, it was presumed that such records (despite vacillating verbal claims), may in fact, not exist.

4.18    Document unreliability was experienced by several Plaintiffs, where documents presented at meetings (and assured "no changes" were made) were in fact negligently switched with documents containing terms either not agreed to, or to be specifically excluded as represented.

4.19.   Such Switched Document Negligent Concealment is also apparent where the Lender (Westsound) does not provide its Lendees (Plaintiffs), any written rules to explain/comply with complex new changes barring critical Funding.

**APPRAISALS—UNILATERAL DEVALUATION SCHEME**

4.20    Reappraisal Schemes were used without precedent or authority to *re-value* homes/land , with precise values, already agreed-to at contract formation (critical to 80:20 Loan-to-Value ratio).

4.21    This *Devaluation Scheme* unilaterally altered existing terms creating a false bar to promised Refinances and/or agreed Loan Extensions.

4.22    And here, as potential similarly situated Plaintiffs, builders were prevented from securing 3rd party funding because of versions of this negligently imposed *Re-Appraisal Devaluation Scheme*.

4.23    This devaluation scheme was also frequently coupled with failed 'Loan Extension' promises that led to foreclosures and the builder's credit destruction [noting that, the Lendee was actually charged for the Bank's new Appraisals every 3 months].

4.25.   Some of the Plaintiffs that eventually attempted to secure emergency funding were the

victims of a version of this confusing and complex pattern of deceit [property valuation deception]

that ultimately forced them to deal *only* with Westsound, where the Bank insisted upon adherence

collateral obligations in their personal residences, as Plaintiffs herein experienced, and presumably

a other similarly situated Plaintiffs may have experienced.

FUNDING/DEVALUATION SCHEMES EFFECT—FINANCIAL DESTRUCTION

4.26   Westsound's use of Appraisals of questionable origins [100% controlled by the Bank],

sharply devalued assets, which in turn became the 'reason' for funding delays/denials.

4.27   Previously loan 'Draws' were automatic per contract terms, but after regulation, loan

'Draws' became *contingent upon* an evolving set of highly complex new dispositive rules that were

implemented and explained by low-level staff ("Amber & Kim"), who had no construction loan

credentials, and as the only contact generally, they gave erroneous and incompetent advisement.

4.28   For all construction loan services at [post-regulation] Westsound, there was an elastic chain

of command, and at rare moments a Supervisor/Executive would step in, with rarer effectiveness.

4.29   As a result of Funding Nonperformance , all the Plaintiffs of this litigation were rendered

less (or un-) creditworthy by the Bank's negligent acts, causing substantial harm to businesses, and

perhaps the health and welfare of vast numbers of similarly situated Westsound Loan Clients.

4.30   Having no lawful excuse to relieve performance owed to the Becker Family Builders,

the Bank's acts appear violative of contracts law, federal regulation and statutory code, as well as

Washington specific law, as justice so requires to begin to ameliorate this egregious, unlawful, and

inhuman Harm directly and proximately caused by the Defendant's Negligent Acts.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

# V.    CLASS REPRESENTATIVE FACTS

REPRESENTATIVE FACT PATTERN—NEW 'DRAW' TERMS—NEGLIGENT DECEPTION

5.1    One Plaintiff had negotiated a loan with the standard practices existing, but was deceived when his company experienced major Draw restriction changes in the end of 2007, which worsened in 2008.

5.2.    At the outset of construction, the lending client was told he would be forced to complete the certain aspects of the project, before <u>any</u> funding could be obtained.

5.3    On most loans, the practice was to identify the phase of construction (for example: 'Siding') and Westsound would fund the *percentage of completion* of that phase, and make the correlating percentage of payment directly to the Builder/loan client (if not, a lump sum in advance).

5.4.    However after regulation, the Defendant told this Plaintiff that since he was the "Grantee" [on his building lot] he was thereby excluded by a new rule from obtaining any 'Draw Funding'.

5.5    This was an inexplicable departure from the rules established at the time of the contracting this loan (and a long and consistent history of loans with Plaintiffs to this action), and when the Plaintiff confronted Westsound's sole representative with alleged decision-making authority, he was absolutely refused compliance with agreed terms of funding (or even any good faith modifications to mitigate the harm caused).

5.6    The Defendant had the promised Funds (Gold) and simply made new rules, leaving this and other Plaintiffs herein, no choice but to comply with arbitrary & capricious rules, or be totally cut-off from even the hope (false as it may have proven to be) of securing funding as promised.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

5.7.    This as many of the Plaintiffs herein (and anticipated upon Joinder of other such Plaintiffs harmed), were forced to re-bid [already bid by Lendees as per contract inception terms] each phase of construction, and only Bank-selected subcontractors and material suppliers were paid, while the builder was deprived of all funds, and was reduced to devoting many hours to just assure subs and suppliers were paid, in the many attempts to rectify this and other evolving and complex Funding requirements and perquisites that were invented and controlled by the Bank.

REPRESENTATIVE FACT PATTERN—NEW 'DRAW' TERMS—EFFECT

5.8    New, unilaterally imposed Draw schemes, deprived this and other contractors herein of all operating expenses to run their businesses.

5.9.    Further, this stopped building projects and completely destroyed the ability to secure new projects for future income.

5.10    As always, the Bank generated substantial Interest, while it simultaneously withheld the very purpose of their existence in loan contracts: *to provide critical funds timely as promised*.

5.11    One Plaintiff had suspect resistance with the foundation installation, which defiled financial prudence (mathematics) and the principles of sound logic.

5.12    To wit, two (2) bids were submitted to Westsound. One was for $20,000 (due in advance) by a Sub who bid it without a site inspection (curiously, it was accepted), and the second bid was by the Plaintiff Contractor for $18,000 with half the funds paid directly to the Supplier.

5.13.    It was explained to the Contractor that he was to 'make money after the home sells' and 'not up front like the subcontractors'.

5.14.    Apart form losing $2,000 net, the logic is further exposed as inaccurate, where General Contractors FREQUENTLY perform work (phases) on their own building projects.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

5.15    The same false reasoning (that was also contrary to prior practices) was again shown on the 'roofing phase', where the Plaintiff Contractor was denied a $3,000 bid ($2,000 in materials directly to his supplier) in inexplicable favor of a $5,000 bid (or a net $2,000 loss).

5.16    Through this evolving pattern of restrictions and prohibitions, this Plaintiff was also exposed to fallacious promises of a loan Extension, and fell victim to devaluing by re-Appraisal schemes—all of which could have been perpetrated upon other potential Plaintiffs.

5.17    And, all Plaintiffs herein were unable to conduct normal Lender/Lendee business relations with the Bank after regulation, often due to incompetence or unavailability of decision makers.

REPRESENTATIVE FACT PATTERN—'NEW FUNDING RULES'—ARBITRARY APPLICATIONS

5.18    Eventually some Plaintiffs began to talk (with other Westsound builder/Lendees) about the specific promises and new procedures, along with the specific answers given by Westsound.

5.19    Some Plaintiffs then began to discover that Westsound's 'new rules' were not consistent with other Westsound contractor/clients (sometimes different rules or the same rule with additions or subtractions making the funding restriction harder or easier), and that evolving schemes and tactics used by Westsound were not only deceiving, but subjectively applied.

5.20    Taken as a whole—Negligent Performance, Tactics & Schemes preventing [agreed] Funding, and Arbitrary Rules Application—Westsound Bank's Acts formed a very pervasive and obdurate Pattern & Practice of Deceit.

5.21    All Plaintiffs were rendered near or in Default, as a direct result of this Pattern of Deceit.

5.22    Defendant's Acts show Inexcusable Neglect in performance of good faith funding and a further definitive breach of Fiduciary Duties inducing unjust Contracts of Adhesion.

BECKER FAMILY BUILDERS COMPLAINT - 15

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

# VI.  EXECUTIVE AUTHORITY FACTS

EXECUTIVE OFFICERS—CONTINUING PATTERN OF DECEIT—NONPERFORMANCE

6.1     After enduring a long pattern of incompetent advisement and vacillation in authority, some Plaintiffs were finally granted meetings with Bank's Executive Officers.

6.2     When the Plaintiffs sought to rectify this injustice, the Bank's Executives would at times start the flow (temporarily) of easing certain restrictions to Funding.

6.3     Such accommodations were still deficient with critical builder scheduling delays (up to 2-3 weeks) with extensive documentary requirements that were [now] required to receive the previous promised Funding.

6.4     Westsound never credited prior losses that it caused their Lending Clients, thus Defendant failed to mitigate the harm it *should have foreseeably known* it caused, and was only worsening by a meshwork of breaches of prior promises, and new conditions & restrictions to Funding.

6.5     Certain Executives offered refinanced loans ended up having exorbitant interest for meager amounts that provided no meaningful building funds after fees, costs, and prior interest owed were offset or deducted on [re-Appraised] devalued lots/started projects.

6.6     The reason [entirely new to Plaintiffs] for suspension of previous 'Loan Extensions' was belatedly given by Westsound's Executives as, 'the [Federal] Auditors were at the Bank [Westsound], and they [the Auditors] are not allowing us [Westsound] to give any money out'.

6.7     And, one Bank's Executive further added that 'we need to justify every penny going out' when supporting some of the tactics used by his employees to deny Extensions that were properly requested under the prior [and only mutually agreed] rules.

BECKER FAMILY BUILDERS COMPLAINT - 16

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

6.8     Such claimed motives would be without justification, thus arbitrary if applied to deny or unreasonably modify previously agreed refinancing or loan extensions.

6.9     'Draw Funding' was also unreasonably withheld, or *Forced Adhesion* to obtain a lesser amount than agreed-to in the Contract's Draw Schedule. Preserved Evidence shall be offered at trial (lengthy voicemails, etc.) of Westsound employs, such as the team staffers, Amber & Kim, who after regulation were placed in charge of the highly complex rule changes to Draw Funding, attempting to explain absurd results of New Draw Rules, such as how $22,000 now equals $13,000.

6.10     Unforgivably, Westsound <u>never</u> provided credit for interest monies charged (accrued or paid) during the precise period of time where Bank Employee errors, (admitted by Executives) undermined the fundamental performance required of the Lender: *to fund the construction loans timely as per terms and practices agreed at the time of contract assent.*

<u>EXECUTIVE OFFICER—CONTINUING PATTERN OF DECEIT—PREDATORY LENDING</u>

6.11     With mounting bills aging at Suppliers and Subcontractors, some of the Plaintiffs were finally referred to certain Westsound Bank Executives, as facilitators to create new loan packages due to 'some mistakes' in funding promises identified by other Executives.

6.12     These renegotiations of loans were once again merely deceitful paths of vague inducements (for Funding that *should have been* paid prior); moreover, such newly negotiated loan products were excessively oppressive with additions of odious preconditions and cross-collateralization of family homes that were harsh considering Westsound's own Acts caused the harm.

6.13     It was further explained (perhaps erroneously) at multiple levels to multiple Plaintiffs herein, that the new top employees at Westsound were 'all lawyers now', so it would be pointless to fight a Financial Institution of Lawyers (though possibly false, this threat was prevalent).

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

6.14    Consequently, to get agreed Refinances, Extensions, or Draw funding, short of ill-advised [by Westsound] legal action, meant submitting to the absolute will and control of a conflicted adversary under the *Guise of a Fiduciary.*

6.15    Westsound's prior misgivings to contract creditworthy builders (claimed to be alleged by Federal regulators) was not fair justification for new rules that impinged heaviest upon those most dependent on Westsound (to wit: builders who had little hopes of attaining funding, where Westsound refused to honor pre-regulation agreements concerning Draws, Extensions, and/or Refinances and developed schemes and tactics that undermined the builder's normal business operations, followed by creditworthiness, and eventually financial survival).

REPRESENTATIVE FACT PATTERN—PREDATORY LENDING PRACTICES

6.16    One stark example of predatory lending was a new builder, his wife and young family. He had no professional General Contracting experience, but owned a family property (with equity)... yet had an annual income averaging [only]: **$35,000.**

6.17    This Plaintiff was courted by the Bank's Loan Officers and Executives who loaned him approximately One & a Quarter Million Dollars: **$1,266,000.00**

6.18    To qualify for this loan, Westsound required only the most basic documentation (3-years tax returns averaging $35,000 in annual income and a Plaintiff produced, single sheet explanation of the Plaintiff's Assets).

6.19    These loans concerned 3 real properties (2 building lots), and a scheme to 'wrap' the equity of the Plaintiff's personal residence, the only equity asset, into a loan formula.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

6.20    In the Bank's manipulation of requirements to Funding that were verbally represented, the Plaintiff opened a $100,000 "Line of Credit" at the outset of the loan (it was discovered to be an *Unusable Fund* forming a Bank Lien on Plaintiff's family home, and could <u>not</u> be used for business operating expenses, thus the line of credit was never used… and the Lien was not removed.

6.21    After regulation, Plaintiff was thoroughly confused by the representations when compared to actions by the Bank Employees, so a meeting was finally scheduled with a Westsound Executive to define ambiguous terms misleadingly used by its Employees [i.e. *Terms Shifting* tactics].

6.22    However, the Bank's Executive was equally ambivalent perpetuating a deceptive pattern, until eventually pushed, and then the Plaintiff was confronted with absolute terms that were extremely unfavorable to the Plaintiff (and reciprocally beneficial to the Bank), representing a stark departure from earlier representations made to the Plaintiff.

6.23    Discovery of mounting discrepancies and a series of questionable tactics precipitated Executive meetings, but ultimately these meetings with the top Westsound Executives did not fully clarify or justify certain acts that many Plaintiffs herein endured.

6.24    For example, contrary to Defendant's prior representations, Plaintiffs ended up with 'Back-End Fees' that apart from their exorbitant costs, were specifically represented by the Bank to Plaintiffs herein, as <u>not</u> to be included in specific loans.

6.25    To further frustrate attempts to free themselves from Westsound's clutches by refinancing with an outside Lender (Bank of America), Westsound's Executives filed and refused removal (as promised) of a Lien on a contractor's personal home, and without excuse refused to release documents for Westsound Bank's loan pay-off amount, until the day the BofA loan offer expired.

**THE ABRAMS FIRM**
**John Phillip Abrams**
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

## VII. ILLUSARY PROMISES FACTS—PATTERN OF DECEIT

7.1     The Plaintiffs (builder and wife) of the prior representative fact pattern were also victims of a Grossly Negligent act, and subsequent failure to remedy an indefensible claim.

7.2     This most egregious act to this builder, his wife and family, was Westsound Bank's negligent attachment of $310,000 in falsely created debt recorded against their family home.

7.3     This $310,000 false attachment of debt occurred when the Plaintiff had secured funding on a BofA loan, and the $310,000 of debt was levied in the form of a misrepresented Deed of Trust (and later, a claimed counterpart Note—though it was never produced upon repeated requests) indebting Plaintiffs' home, thus preventing new credit sources due to this 3rd Position Loan (in appearance): WHERE THE LENDEE NEVER RECEIVED THE PROCEEDS OF DEFENDANT BANK'S SHAM LOAN OF $310,000.00.

7.4     This 3rd Loan [recorded Deed of Trust] made the Loan-to-Value ratio meaninglessly upside down, and portrayed the Plaintiffs (husband & wife) as overextended & un-creditworthy.

7.5     Probably due to incompetence (multiple-sources also caused unreliability), the Plaintiffs experienced *Terms Shifting* that effectively created multiple-negligent misrepresentations by the Bank, but before signing the Bank clearly represented that a 'collateral interest' would be triggered, *only if*, a default occurred in Plaintiff's 2 building project homes.

7.6     The Plaintiffs crucially needed the BofA loan to protect their personal residence from Westsound's predatory acts upon their Family and others known and trusted by them.

7.7     Plaintiffs did not have a duty to attach a *future collateral interest upon a condition subsequent*, but Westsound threatened to not cooperate (and subsequently did not) with BofA in the refinance of Plaintiffs' family home.

BECKER FAMILY BUILDERS COMPLAINT - 20

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

7.8     The Plaintiffs agreed to a *future collateral interest* <u>only because</u> they (at that point) had very good credit and had made all payments timely and current to Westsound Bank, but the Plaintiffs had no way of knowing by the Bank's verbal representations leading up to and during the loan document signing, that the Bank would immediately record one of the myriad of future use, and 'only if you default', documents that they were required to sign.

7.9     These Plaintiffs are certain that they were never told any of the documents signed were for immediate recordation of a [false] debt owed, and Plaintiffs would never had agreed to render themselves un-financeable by commercially reasonable standards.

7.10    The Bank unlawfully withheld cooperation in the refinance of the Plaintiffs' home to force the entry into multiple Adhesion agreements (as a last resort to avoid financial destruction), that were used as unlawful preconditions to the Bank's preexisting duty of cooperation.

7.11    This sole act shows a complete lack of care or duty in inexcusable conduct by the Lender.

7.12    As a result, Westsound obtained Predatory Adhesion to Unconscionable terms devoid of good faith and defiant of fair dealing standards.

### 'LOSS PREVENTION' EXECUTIVE—ILLUSARY MITIGATION—CONFLICT OF INTEREST

7.13    Defendant Westsound had an Employee, "Heath", who they hired from a local Windermere Brokerage for his Real Estate Sales expertise.

7.14    At one point Heath was transformed to the Bank's Executive Authority for *Loss Prevention* dealing with failing employee promises, and now, failing construction loans, yet Heath had a professional real estate purpose that should have been disclosed as a *arrant conflict* when advising contractors in or nearing default.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

7.15    In performance of the task of 'Loss [Default] Prevention', Westsound Executive Heath would routinely confuse Plaintiffs by saying ambivalent statements when taken together, such as: 'Why did you not come to us earlier?' Followed by, 'Bret [Terry, Jennifer, Kevin, Jace (the Bank's 'Fixer'), Rene, or Rodrigo] should not have continued to promise you that Extension or Refinance.'

7.16    Then abruptly (to Plaintiffs herein) this Executive states: 'the Bank never had any intention of extending your loan,' and 'pay up or we'll foreclose' (or similar language with the same effect).

7.17    An additional layer of prerequisite requirements to obtaining [previously] normal funding was the claim of 'Interest Carry' in loans, where the Plaintiffs were told by either Rene or Rodrigo (and by an Executive the day before one signing) that the term would be in the final documents, and was by varied methods mixed-up with the many documents signed.

7.18    As typical with such encounters of *negligently switched documents* they disfavored the powerless (and increasingly penniless) builders.

7.19    And, Fact & Witness Memoranda indicate, that even some documents that were executed with proper disclosure, were agreed-to simply for business survival from harm caused by Westsound's pattern of deceitful breaches, and thus were forced into Adhesion of Unconscionable Terms in an attempt to avoid a greater ill of catastrophic economic business failure.

**'SHORT SALE' GUARANTEES—UNDISCLOSED ILLUSUARY PROMISE**

7.20    Westsound Executives have induced builders to 'keep building' and/or 'lower the price' because 'the Bank will do a *Short Sale* to make up the difference'.

7.21    However, upon performance by the Plaintiffs herein, and eventual offers to fully and fairly resolve matters, the Bank belatedly reveals that it will take a "Short Sale", so long as the builder brings in a cashier's check for the full amount owing on the loan and any fees or costs.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

7.22    This definition has been posited to an ethical lending standards expert and a real estate practices consultant and disciplinary drafter—which conclude that the use of the industry term "Short Sale" in this specific context is "not an acceptable practice [or recognized definition]" and the experts are in complete agreement that use in this context "would be deceitful."

## VIII.   GOOD FAITH & FAIR DEALING—GROSS NEGLIGENCE

REPRESENTATIVE FACTS—GOOD FAITH & FAIR DEALING—PATTERN OF DECEIT

8.1    With the construction lending department-wide termination (some 30 employees), it became somewhat defunct and negligently under-staffed, both in terms of staff numbers (1-2 permitted to have contact with contractors) and in terms of competency for the assigned tasks (and grants of bank authority).

8.2    In the end—despite this Plaintiff's successful sell-out of 4 homes prior to the Bank's substantial breaches in agreed funds—the Plaintiff was harmed well-into six figures in hard costs and income livelihood destruction, which *but for* Westsound's breaches would not have occurred (representing the lowest Lendee damages owed to any of the Becker Family Builder-Plaintiffs).

8.3    This Plaintiff, as typical with all Becker Family Builders, exhausted existing credit resources and even retirement account stocks & mutual funds that are now by rule irreplaceable.

REPRESENTATIVE FACTS—GOOD FAITH & FAIR DEALING—PATTERN OF DECEIT

8.4    Defying bedrock principles of good faith & fair dealing owed under both federal law and Washington law, and generally under contract & doctrinal law applications, the Defendant's scope of practices negligently lacked good faith causing a patently unfair pattern of deceit.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

8.5     This extended to even successful construction projects where the Lender was fully paid by Builders herein, and outside Fact Witnesses for the Plaintiffs, shall testify to the same or similar patterns of deceit as identified in Representative Fact Sections herein).

8.6     Plaintiffs herein (husband & wife), had 5 individual loans.  To resolve the last loan because of such acts perpetrated by the Defendant, these Plaintiffs were ultimately forced by Westsound to sell their 'family home' and move into a bigger 'building home' with an $800 increased monthly payment obligation difference, as Westsound siphoned equity from their affordable home.

8.7     In late 2007, Plaintiff was denied a second from a 3rd Party Lender because of Westsound's refusal to subordinate its Lien Interest (contrary to its promise).

8.8     Westsound Bank also unlawfully seized (an account 'freeze') of Plaintiff's bank funds to frustrate the Plaintiff's ability to refinance or obtain a second loan. .

8.9     Because a 'spec home' was required to be occupied and the Plaintiff's home (major asset) was required to be collateralized in an unconventional manner, Plaintiff's Debt-to-Income ratio was falsely inflated, barring credit under commercially reasonable financing standards (as other similarly situated Plaintiffs may have or will soon encounter).

NEGLIGENT CONVERSION—DEPOSITOR/OTHER FUNDS

8.10    The Bank may have negligently converted builder's private funds in amounts ranging around $40,000 to $50,000 per Plaintiff whose funds were extracted contrary to representations and without consent, as Westsound internally withdrew the funds.

8.11  . Such acts would seem to violate Washington law, and also could be deemed a breach of the Banking Institution's Fiduciary Duties owed to Depositors. *Good Faith argument under UCC, Article 4.*

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

8.12    For example, Defendant Westsound removed $45,000 from a Plaintiff's operating account without prior consent and contrary to prior stated uses for the funds.

8.13    As a result, Defendant may have violated Federal & Washington statutory and doctrinal law, as well as a certain violations concerning misrepresentations as to the uses of such funds that were described to Plaintiffs at both the moment of Contract Assent and later when the Bank made negligent assurances that such funds were 'your money', but shortly thereafter extracted about 90% of said funds, even though, the underlying loans were 100% current.

8.14    One builder had a $50,000 reserve account (for business purposes concerning preliminary development of new projects) that was unlawfully invaded by Westsound in retaliation to the Lendee's refusal to accept Unconscionable terms to extort thousands to simply comply with it's preexisting Funding duties.

8.15    Just prior to a negligent conversion, Westsound had suggested that a Plaintiff use such funds to pay some $44,000 in Interest due on a home in progress (and the subject of unlawful Draw denials by the Bank), but the Plaintiff declined without further discussion or authorization for such a withdrawal. Such funds were thereafter withdrawn.

8.16    As a result, Westsound obtained Cash by implementing odious terms when compared to contrary on-point representations, thus acting devoid of good faith and defiant of fair dealing.

### REAL ESTATE COMMISSION—TORTOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

8.17    One Plaintiff is married to a Plaintiff builder herein, and is the Realtor for several Westsound building loan clients, and should have received up to $53,000.00 in regularly occurring commissions had the homes been completed without funding delays and/or denials, thus constituting Tortous Interference based upon derivative Torts perpetrated against the Builders.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

8.18     Upon information and belief there exists other Realtors who likewise would seek damages for denials of similar earned commissions, anticipated commissions, and/or unfair business practices violative of statutory and doctrinal law, if they may be ultimately Joined.

8.19     Westsound Bank's new 'Loss Prevention Specialist' did not provide genuine help, and was conflicted to create sales inventory (including any benefit, bonus, or commission split through Windermere Brokerage, whether documented or not, in which a violation of law has occurred).

8.20     This allegation is extremely problematic because Defendant Lender had a Real Estate expert as its new [post-Regulation] point-person for: *construction loans either in (or nearing) Default.*

8.21     The use of a decision-maker without construction loan experience, negligently created a conflict prone impairment to fiduciary interest a reasonably prudent Bank *should have prevented.*

IX.     UNCONSCIONABILITY UNDER WASHINGTON LAW

UNCONSCIONABILITY—PROCEDURAL & SUBSTANTIVE

9.1     Under Washington law, the Bank's acts may be violative of the Unconscionability Doctrine.

9.2     If a contract term was unseen in Defendant's documents that allowed removal of monies from a depositor's bank account, and the depositor was deprived any prior notice by Lender's representations (undisclosed/omitted, or misrepresented, as here), this very act could constitute Procedural Unconscionability under the prevailing law.

9.3     This, and certain Adhesion Contracts pled herein, may fairly be deemed too harsh, too one-sided, and/or too oppressive, constituting Substantive Unconscionability, where facts prove the contract terms are patently unfair, and thus unenforceable under Washington law.

BECKER FAMILY BUILDERS COMPLAINT - 26

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

**KNOWLEDGE IMBALANCE OF LENDER-LENDEE RELATIONSHIP—FIDUCIARY DUTIES**

9.4    Plaintiffs trusted and reasonably expected Westsound to uphold its continued obligation to act in good faith to honor preexisting duties forged link-by-link over many years.

9.5    Plaintiffs were vulnerable in their reliance upon the Bank and the presumed fiduciary trust and financial good faith to obtain agreed funding provisions to accomplish their building needs.

9.6    Admittedly, the Plaintiffs were inexperienced at enforcement of the fine print terms because the Lender frequently said 'trust us' and 'we're your loan experts' and extended funding and loan draws: 'we have always been there for you, and it won't change' (both when promised in earnest at original Assent, and even when such representations were provably negligently promised intermittently after regulation).

9.7    And, that imbalance of knowledge was reflected when Plaintiffs were readily convinced by their 'loan experts' that financing would occur even after any 'paper default dates' and such extensions to existing loans or refinancing packages would be 'no problem'.

9.8    Many promises made negligently put the Plaintiffs after-the-date of loan Refinancing or Extension cure dates (this was a frequent practice). Despite impending foreclosures, Plaintiffs were told frequently to 'relax' and 'don't worry about the foreclosure date.'

9.9    Initially, the builders trusted and relied upon their Bank's new employees and claims of construction lending expertise, *and did not imagine* that professional hires of their trusted Lender with a long history of consistent construction lending practices and performance, could somehow *not possess* the skills to make promises and execute agreements, later discovered to be negligent.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

9.10    Here, a written set of new rules (despite their unlawful and unjustifiable bar to preexisting funding), *would have* assisted the Plaintiffs in compliance and eliminated the failures (for whatever reasons) of the Defendant's oral descriptions.

9.11    New funding rules were vital to Plaintiffs' ability to repay loans (home completions/sales).

9.12    It is known that the Defendant *would not* produce such a written Funding rules, and perhaps the Defendant *could not* (or Employees were not allowed to produce such lists) because the Defendant would thereby create a written record, and thus proof of Unilateral terms violative of a history of long-established bargained-for contracts to obtain the Debtors' (Plaintiffs') contract assent, where Defendant later deprived the Plaintiffs of prior agreed terms and specific duties.

9.13    Negligent Concealment can thus be found, where essential facts and/or documents were withheld from Plaintiffs that were nearing default deadlines, but were denied the benefit of fair disclosure when promised loan extensions or refinances were known problematic, yet disclosure was withheld (often because of elastic decision-maker unavailability) until after fatal dates.

## X.    CAUSES OF ACTION

**NEGLIGENCE**

10.1    Consumer Protection Act. The standard to invoke Washington's Unfair Business Practices-Consumer Protection Act (RCW 19.86), is negligent misrepresentation.

10.2    Negligent Misrepresentation. Negligent misrepresentation may be found where the intent to deceive (Scienter) is not provable, but all other elements of fraud would exist. Negligence requires a causal connection where the act was the direct and proximate cause of the injury. Absent any independent intervening causes, liability is causally linked as a natural and probable consequence of the Tortfeasor's Act.

BECKER FAMILY BUILDERS COMPLAINT - 28

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

1   Breaching Defendant's duty was evidenced by, and was inferable from Negligent practices, inducements,

2   concealments, omissions, and/or misrepresentations. The Bank was noncompliant in its Funding duties.

3   Here, the full extent of Plaintiff's business destructions and consequent personal injuries and losses, were

4   the direct and proximate result of Defendant's acts, including unilateral and oppressive changes to essential

5   terms that were highly material to the Lending Contracts  There was a Good Faith Duty of Performance

6   that was justifiably expected and required for the Lendees' construction business survival. The Plethora of

7   Defendant misrepresentations impacted the value & utility of the lending contract, as they were material

8   alterations to preexisting duties bargained-for at Contract Assent, thereby fusing the Defendant Lender's

9   liability to its failure of compliance.

10  10.5    Negligence Standard—Applied. Here, the existence of abrupt and numerous unilateral changes to

11  essential terms to the Plaintiffs' means to perform, frustrated the very purpose of a construction loan,

12  rendering performance an impracticability (building <u>without</u> building funds)—all such acts equate to a

13  *Pattern of Unfair & Deceitful Business Practices that should have been known by any reasonably skilled & prudent*

14  *Lender to cause their Lendees great harm.* The Bank's meshwork of deceitful policy changes altered material

15  terms constituting misrepresentation, thus entitling the Plaintiffs to damages for all harm flowing from the

16  Defendant's tortous acts in departure from past practices and long-standing terms essential to the Plaintiffs.

17

18  10.6    Negligent Inducement. Where information should be within the scope of one party's knowledge,

19  Inducement is found where the duty of disclosure of material facts is breached by Negligent Omission or

20  Misrepresentation. Funding Terms were material to the transactions, thereby constituting a duty for the

21  Bank's Fair Disclosure that could have prompted refinancing at less costly stages, or before financial

22  destruction because of Lender's schemes. Plaintiffs were verbally deceived as to the expectation of loan

23  extensions or promised refinances. It is probable that negligent assertion or omission of vital terms would

24  likely deceive many contractors and homeowner builders (in fact, <u>all</u> mortgage Lendee/clients to the Bank)

25  <u>who in the aggregate represent a substantial class of potential Plaintiffs who may have been induced to</u>

<u>assent to contracts with the potential for substantial harm due to the Defendant's negligent performance.</u>

BECKER FAMILY BUILDERS COMPLAINT - 29

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

1  Requisite elements for Negligent Inducement are: (1) misrepresentation by a negligent statement of a

2  material fact; (2) on which the party harmed was entitled to rely; and, (3) the reliance was the proximate

3  cause of injuries sustained.  Negligent Inducement requires a fact-dependant threshold (pled here in the

4  particularity). If the Defendant Lender failed to disclose material facts while conducting business practices

5  that appeared (and were) non-negotiable bars to the Plaintiffs' promised building funds, they would be

6  deceived as to essential facts and unlawfully deprived the obligation of the Bank's good faith duty to not

7  frustrate performance due under the lending contracts. All such acts should have been known to produce

8  devastating consequences to Plaintiffs, as they did, in an amount proven at trial.

9  10.7     Negligent Concealment. Where information that is material should have been within the scope of

10  one party's knowledge, the duty is to divulge information that party should reasonably expect is material.

11  The Defendant's knowledge of Auditor's regulations was negligently withheld or misrepresented to

12  Plaintiffs until their collective financial ruin. Such accurate and truthful information was material, and

13  thereby breached the Defendant Lender's duty of good faith disclosure. Unilateral conditions and acts of

14  deception (from new Draw rule tactics, to Appraisal devaluing schemes) breached original terms and

15  bargained-for promises, but the continued negligent inducements/promises merged Tortous liability.

16

17  10.8     Negligent Concealment—Applied. Negligent Concealment can be found where one party has

18  material knowledge that is deprived from a contracting party owed a duty of disclosure. Here, the absence

19  of any written disclosure of imposed restrictions (such as the newly formed rules to perfect Draws for

20  building funds, or various schemes as detailed herein that together develop a pattern & practice of deceit),

21  left the Plaintiffs ignorant as to new policies, practices and procedures, thereby frustrating compliance.

22  These new rules, policies, and practices were dispositive in determining funding and contrasted the rules

23  promised at contract formations. The rules varied with a given Westsound Employee who explained them,

24  and there again, when the same Employee changed or altered previous policies stated (frequent).  As a

25  natural and probable result of such acts, Plaintiffs had no certain path to comply with an evolving

meshwork of new rules and restrictions that the Defendant arbitrarily imposed with foreseeable detriment.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

1  **10.9    Consumer Protection Act—Attorney Fees and Treble Damages.** Consumers, who by negligent
2  misrepresentation are deceived, may avail themselves of enhanced [triple] damages, attorney fees, and
3  costs prescribed under the Washington Consumer Protection Act. The Act requires a showing that the
4  Tortfeasor used unfair or deceptive trade practices with the capacity to deceive the general public.
5  Statements that mislead or exaggerate, failure to disclose material facts, deceptive advertising, and the like,
6  are all violative.  Under the Act, such unfair and deceptive trade practices, once put into the stream of
7  commerce, contravene the public interest.
8
9  **10.10    Consumer Protection Act—Applied.**   Defendant used deceptive trade practices that were
10 foreseeable to lead to the Plaintiffs' ultimate harm, which was the direct and proximate result of the Bank's
11 failure to Fund as promised. Additionally, Defendant used unjust tactics of Enrichment via deceptive
12 promises of future performance, such as Draws or Refinances that ultimately made the Builders pay
13 increased monies, while the Defendant simultaneously failed to fulfill its contracted funding duties. Such
14 deceitful business practices are directly contrary to Washington law. The capacity to deceive the general
15 public is indisputable, as Defendant Lender has in the past (determinative alone), and may in the future
16 continue Unlawful Lending and Business Practices in its operations in some form (whether by successor,
17 merger, receivership, or otherwise) with the capacity to deceive countless other consumers, demonstrating a
18 substantial risk for repetition. Accordingly, the Plaintiffs are entitled to protections afforded by the Act.
19
20 **10.12    Negligence in Employment/Authority.** Bank turmoil was caused because Westsound fired some 30
21 employs of its construction lending staff, and then substituted very few and quite inexperienced staff
22 members (for the Plaintiffs, 1 to 2 contacts after the lending department firing was all they were permitted
23 to have access to). Facts alleged herein in the Particularity, detail the Negligence in Firing, Hiring, and
24 Grants of Authority—all such acts by Defendant were beneath the standards and duty of care to refrain
25 from Negligent Acts and to honor Good Faith Standards owed under the prevailing law.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

## BREACH OF CONTRACT

10.13    Breach of Contract.  A contract is a bargained for exchange where the parties allocate risks and rewards.  To have and enforceable contract, the parties must mutually assent to the same terms by agreement.  A contract is binding so long as no defenses to performance exist.  If there is a breach of contract, the non-breaching party is entitled to expectation damages to put them in the same position, as if the breach had not occurred.  Here, the Plaintiffs are due relief resulting from contract purpose frustration by use of unilateral restrictions to funding that were materially different terms [no meeting of the minds].

10.15    Breach of Contract—Misrepresentation.  False statements or omissions of material facts that induce contract assent, constitute misrepresentation.  In Washington, a Breach of Contract may be founded upon Contract Misrepresentation.  Here, ample supporting facts regarding Misrepresentation may provide this Court contract remedies as justice so requires.  Such contracts may properly be reformed; or alternatively, the Court may exempt the Plaintiffs from any monies/securities claimed owed by the Defendant for any loan contract or security agreement based upon the misrepresentation facts in support (Voidable), or by doctrinal application of Procedural and Substantive Unconscionability.

## PROMISSORY ESTOPPEL

10.17    Promissory Estoppel.  A promise that the Promisor reasonably expects the Promisee to act upon or forbear from acting (i.e. foreseeable), in which the Promisee relies upon the promise and justifiably acts/forbears to their detriment (i.e. justifiable reliance), may be enforced to avoid injustice by providing reliance damages to the harmed Promisee(s).

## UNJUST ENRICHMENT

10.16    Unjust Enrichment.  Defendant knowingly procured benefits from the Plaintiffs monies, interest obligations and security in assets of substantial value, including Plaintiffs' family homes.  Defendant received excessive enrichment at the Builders' expense; more than *would or should have been reasonably expected* absent Defendant's deceitful tactics.  As a consequence, the Plaintiffs are now due compensation for Defendant's Unjust Enrichment in an amount to be proven at trial.

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

1   WHEREFORE, the Plaintiffs request that judgment for damages be granted on the Complaint and
2   costs be taxed against Defendant as follows:

3       1.      For judgment against Defendant for the causes of action listed herein (including
                treble damages), in amounts to be proven at trial;
4
5       2.      For judgment against Defendant, for reasonable attorney fees and costs incurred by
                the Plaintiffs as applicable under the law;
6
7       3.      For such further relief as the Court may deem just and equitable.

8   DATED this ⎵17⎵ day of March 2009,

9                                           THE ABRAMS FIRM
10
11                                          John Phillip Abrams, WSBA # 31068
12                                          Attorney for Becker Family Builders

13

14                                          CERTIFICATION

15  The undersigned represent the Becker Family Builders Co-Plaintiffs Group in the above-entitled action. And for each undersigned,
    they have read all pages to the above Complaint, and believe it to be, and certify it to be accurate, true, and correct.

16  DATED this ____ day of March 2009.

17
18  Jerry Becker                Mary Ann Becker           By: JMB Enterprises
19
20  Richard Sanders             Shelly Sanders            By: Sanders Enterprises, Inc.
21
22  Matt Templeton              Chet Templeton            By: Creative Structures & Design
23
24  Joseph Christman            Kristin Christman         By: JKC Enterprises, LLC
25
    Robert Burlingame           By: Burlingame Construction

    BECKER FAMILY BUILDERS COMPLAINT - 33          THE ABRAMS FIRM
                                                    John Phillip Abrams
                                                    PO 1494 Gig Harbor, WA 98335
                                                    (253) 222-3712 - Facsimile: 649-0223

Ł hibit "A"

| CONTRACTORS BREAKDOWN AND JOB PROGRESS DRAW REQUEST FORM | | | | |
|---|---|---|---|---|
| | | | Draw # 1 | |
| | LOAN#: | | | |
| Allocation of Job Progress | Original Costs | Undisbursed Balance | Amount Requested | CERTIFICATION |
| Plans/Arch/Survey/Eng | $ - | $ - | $ - | The undersigned hereby certify that the date of this request, the improvements being constructed on the above described property have been completed to the extent stated on this certification in accordance with the Construction Loan Agreement between the Lender and the Borrower. The undersigned request a draw on loan funds in the amount stated in this certificate to immediately pay all unpaid bills for labor, materials, and claims against the property. |
| Permits | $ - | $ - | $ - | |
| Temp. Power/Excavation | $ - | $ - | $ - | |
| Footings/Foundation | $ - | $ - | $ - | |
| Framing Material | $ - | $ - | $ - | |
| Trusses | $ - | $ - | $ - | |
| Framing Labor | $ - | $ - | $ - | |
| Roofing | $ - | $ - | $ - | |
| Windows/Sliders | $ - | $ - | $ - | |
| Plumbing/Rough | $ - | $ - | $ - | |
| Electrical/Rough | $ - | $ - | $ - | |
| Fireplace | $ - | $ - | $ - | |
| Masonry & Chimney | $ - | $ - | $ - | |
| Prefab Fireplace | $ - | $ - | $ - | |
| Basement & Garage Floor | $ - | $ - | $ - | Requested Draw Amount |
| Siding | $ - | $ - | $ - | $ |
| Heating/Air Condition | $ - | $ - | $ - | |
| Insulation | $ - | $ - | $ - | Contractor's Signature |
| Drywall/Tape/Texture | $ - | $ - | $ - | |
| Sewer/Septic | $ - | $ - | $ - | |
| Water Hook-up | $ - | $ - | $ - | Date |
| Well | $ - | $ - | $ - | |
| Downspouts & Gutters | $ - | $ - | $ - | Borrower's Signature |
| Exterior Painting | $ - | $ - | $ - | |
| Interior Painting | $ - | $ - | $ - | |
| Countertops | $ - | $ - | $ - | |
| Cabinets/Hardware | $ - | $ - | $ - | |
| Lino./Tile/Vinyl | $ - | $ - | $ - | Date |
| Plumbing Finish | $ - | $ - | $ - | |
| Exterior & Garage Doors | $ - | $ - | $ - | Please disburse funds on (date) |
| Elect. Finish/Fixtures | $ - | $ - | $ - | |
| Carpet | $ - | $ - | $ - | |
| Hardwood floors | $ - | $ - | $ - | per the following instructions: |
| Mill Work/Int. Doors-Trim | $ - | $ - | $ - | |
| Finish Labor | $ - | $ - | $ - | ___Wire funds to (bank name & ABA# name on acct & acct #) |
| Finish Hardware | $ - | $ - | $ - | COPY OF VOIDED CHECK |
| Appliances | $ - | $ - | $ - | for account being used |
| Decks | $ - | $ - | $ - | |
| Driveway/Concrete Patios | $ - | $ - | $ - | |
| Clean-up | $ - | $ - | $ - | OR |
| Landscaping | $ - | $ - | $ - | |
| Misc | $ - | $ - | $ - | ___Check payable to borrower and builder (dual endorsement). |
| Misc | $ - | $ - | $ - | |
| Misc | $ - | $ - | $ - | Mail Check to: |
| **Sub Total hard costs** | $ - | $ - | $ - | |
| Over Head & Profit | o | $ - | $ - | |
| Sales Tax | $ - | $ - | $ - | |
| **Total Construction Cost** | $ - | $ - | $ - | street address required via overnight |
| Contingency | $ - | $0| $ - | FAX UPDATED DRAW FORM |
| **Total** | $ - | $0| $ - | TO: |

# EXHIBIT B

41∤7



RECEIVED
APR 10 2009
Ryan, Swanson
& Cleveland, PLLC

RECEIVED FOR FILING
KITSAP COUNTY CLERK

APR - 9 2009

DAVID W. PETERSON

SUPERIOR COURT OF WASHINGTON IN AND FOR KITSAP COUNTY

BECKER FAMILY BUILDERS CO-PLAINTIFFS GROUP,

        Plaintiff,

v.

WESTSOUND BANK and WSB FINANCIAL GROUP, INC.,

        Defendants.

NO. 09-2-00662-0

**ORDER DENYING PLAINTIFF'S MOTION TO CONSOLIDATE ACTIONS**

    **THIS MATTER** having come on before the undersigned Judge of the above-entitled Court on the motion of Plaintiff's Motion to Consolidate Actions and the Court having considered the Motion, Declaration and materials filed in support thereof and all materials filed in opposition thereto, and being otherwise fully advised in the premises, now, therefore, it is hereby

    ORDERED that Plaintiff's Motion to Consolidate Actions be and hereby is DENIED without prejudice.

    DONE IN OPEN COURT this 7th day of April, 2009.

*Judge Sally F. Olsen*

Judge Sally Olsen

ORDER DENYING PLAINTIFF'S MOTION TO CONSOLIDATE ACTIONS - 1

549386.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1 | Presented by:

2 | RYAN, SWANSON & CLEVELAND

3

4 | By

David L. Tift

5 | WSBA No. 13213

6 | Attorneys for Defendants

7

8.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

.23

24

25

26

ORDER DENYING PLAINTIFF'S MOTION TO
CONSOLIDATE ACTIONS - 2

569386.01


Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

# EXHIBIT C

RECEIVED FOR FILING
KITSAP COUNTY CLERK

APR 2 4 2009

DAVID W. PETERSON

RECEIVED
APR 2 8 2009
Ryan, Swenson
& Cleveland, PLLC

SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR KITSAP COUNTY

BECKER FAMILY BUILDERS CO-PLAINTIFFS
GROUP,

                    Plaintiff,

vs.

WESTSOUND BANK and WSB FINANCIAL
GROUP, INC.,

                    Defendants.

No. 09-2-00662-0

MEMORANDUM OPINION

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss All of Plaintiffs' Claims Under CR 12(b)(6). The Court has reviewed the case file as well as the motions and all other documentation submitted by both parties. On the Promissory Estoppel claim, the Court grants relief and dismisses this cause of action. On the Consumer Protection Act, Negligent Misrepresentation and Unjust Enrichment claims, the Court denies relief as requested.

Dated: April 24, 2009.

JUDGE M. KARLYNN HABERLY

ORDER

JUDGE M. KARLYNN HABERLY
Kitsap County Superior Court
614 Division Street
Port Orchard, WA 98366
(360) 337-7140

RECEIVED FOR FILING
KITSAP COUNTY CLERK

APR 27 2009

DAVID W. PETERSON

1
2
3          SUPERIOR COURT OF THE STATE OF WASHINGTON FOR KITSAP COUNTY
4
5    BECKER FAMILY BUILDERS CO-PLAINTIFFS
6    GROUP,
7                          Plaintiff,                         No. 09-2-00662-0
8    v.                                                  DECLARATION OF MAILING
9    WESTSOUND BANK and WSB FINANCIAL GROUP,
10   INC.,
11                          Defendants.
12
13        I, Jerry Merrill, state as follows:
14        On April 27, 2009, I mailed the following document(s):
15             (a)    MEMORANDUM OPINION.
16
17   by first class mail, postage prepaid to:
18
19   David Tift                              John Phillip Abrams
     Ryan, Swanson & Cleveland, PLLC        The Abrams Firm
20   1201 Third Avenue, Suite 3400          PO Box 1494
     Seattle, WA 98101-3034                 Gig Harbor, WA 98335
21
22
23
24   Dated:  4/27/09
25   Port Orchard, Washington                            Jerry Merrill
26
27
28
29
30

     Declaration of Mailing                          Kitsap County Superior Court
                                                      614 Division Street
                                                      Port Orchard, WA 98366

# EXHIBIT D

2536490223

1

2

3

4

5

6            IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
                  IN AND FOR THE COUNTY OF KITSAP
7

8    BECKER FAMILY BUILDERS                    No. 09-2-00662-0
     CO-PLAINTIFFS GROUP,
9                              Plaintiff,       MOTION TO RECONSIDER ORDER
                                                GRANTING PARTIAL RELIEF ON
10              v.                              PLAINTIFF'S 12(b)(6) MOTION

11   WESTSOUND BANK, and
     WSB FINANCIAL GROUP, INC.,
12                             Defendant.

13

14   COMES NOW the Becker Family Builders Co-Plaintiffs in the above-entitled action by and through

15   their attorney of record, John Phillip Abrams, upon Motion for Reconsideration.

16

17                       I.    RELIEF REQUESTED

18

19   1.1    Defendant moves the court for an Order vacating the partial relief granted to Defendant

20   (dismissal of Promissory Estoppel claim) entered on April 24, 2009. See Court File.

21   1.2    This motion is made pursuant to CR 59(a), which provides that such a motion may be

22   granted where cause is shown upon CR 59(a)(7) in that the law cited in the nonmovant's

23   Response is sufficient when applied to the facts presented to deny CR 12(b)(6) relief in its

24   entirety. And, CR 59(a)(4) support is found in the newly discovered Cease & Desist Order. See.

25   CR 59(a)(4) & (7) and Exhibit 1.


MOTION TO RECONSIDER - 1                        THE ABRAMS FIRM
                                                John Phillip Abrams
                                                PO 1494 Gig Harbor, WA 98335
                                                (253) 222-3712 - Facsimile: 649-0223

2536490223

## II.   MOTION ARGUMENTS & APPLICABLE LAW

2.1     Defendant moved for complete relief (i.e. dismissal of Plaintiff's action in its entirety) under 12(b)(6), and the Court has given partial relief that is appropriate for summary judgment upon merits with associate rules and timelines pursuant to CR 56.

**CR 12(b)(6) APPICATION STANDARD**

2.2     Motions to dismiss under Rule 12(b)(6) are disfavored under Washington law. Collins v. Lomas & Nettleton Co., 29 Wn.App. 415.

2.4     The concept is singular in nature. In consistency is the rule that "no set of facts" could possibly entitle the plaintiff to relief. See, Collins at 419, citing Halvorson v. Dahl, 89 Wn.2d 673.

2.5     Thus, the standard is: beyond *any* doubt a claim may be construed (or cobbled together from barren pleadings) from the facts. And, because of this *disfavored status*, 12(b)(6) motions should be "sparingly granted." Collins at 419, and Halvorson at 676.

2.6     The law is clear that the sufficiency of facts is irrelevant, and allegations must should be assumed to be fully true (*facts presumed*, well-beyond a *light most favorable*).

2.7     It is indisputable that courts, have fervently held that: "Factual Allegations of the Complaint" must be accepted as true. Dennis v.Heggen, 35 Wn.App. 432, 434; Orwick v. City of Seattle, 103 Wn.2d 249; also see, Halvorson v. Dahl, 89 Wn.2d 673.

2.7     The motion should be granted sparingly and with caution in order to make certain that plaintiffs are not improperly denied a right to have their claims adjudicated on the merits. See, Fondren v. Klickitat County, 79 Wn.App. 850, 854, 905 P.2d 928, 930 (1995).

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2536490223

2.8    Therefore, any *hypothetical* facts that would or could arguably support a legally sufficient claim, will defeat a 12(b)(6) motion. See, Halvorson v. Dahl, 89 Wn. 2d 673, upheld in Bravo v. Dolsen Companies, 125 Wn. 2d 745, (1995) and Havey v. Flynn, 88 Wn.App. 514 (1997).

2.9    The "rare exception" is typically absent a judicially cognizable cause of action under Washington law (or other applicable law to be applied), and Promissory Estoppel may be rarely pled, but is nonetheless thought to be a valid cause of action recognized under the law, where the absence of a contract exist but a promise with justifiable reliance exists.

2.10    In some instances (given a plethora of promises concerning loan "Extensions" that ultimately failed and are now suspected to be Fraudulent per Exhibit 1: Cease & Desist Order), Plaintiff's were verbally promised loan "Extensions" (term of art) that could not be legally honored by the Bank. See Exhibit 1.

2.11    There is testimony in this matter and the Becker Defendant matter filed by Westsound (under the same presiding Judge) showing failures of loan extensions and promised loan modifications, as is alleged in the certified Complaint in this matter.

2.12    Accordingly, there remain substantial issues regarding verbal promises that were justifiably relied upon by Lendees who trusted their Bank.

2.13    Since relief from 12(b)(6) dismissal is a *Singular Concept* (i.e. failure to state a claim), the Plaintiff is merely required to show One (1) such claim, and the Complaint shows several viable claims, thus dismissal as the Court recognized is improper.

/

/

MOTION TO RECONSIDER - 3

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2536490223

2.14    However, the Court may have erred in providing partial relief to Defendant, where dismissal of the entirety of claims is inappropriate, instead of handling such a matter pursuant to application of Defendant under CR 56, in which the Plaintiff can fairly defend such under CR 56 rules and standards.

2.15    The Supreme Court has held that dismissal for failure to state a claim <u>may be granted only if</u> it appears beyond doubt that plaintiff can prove no set of facts, consistent with complaint, which entitle him to relief. *Orwick v. City of Seattle*, 103 Wn.2d 249 (emphasis added). CR 8(a)(1), 12(b)(6).

2.16    As to the facts, the complaint survives a motion to dismiss for failure to state a claim upon which relief can be granted if *any state of facts could exist* under which the claim could be sustained. *See Orvick at 255 249* (emphasis added); CR 8(a)(1), 12(b)(6).

2.17    Upon application for 12(b)(6), a court should properly recognize *the potential* to render a weighty final judgment if the Wrong Party has been sued or a complete failure of any facts to prove even a singular claim.

2.17    The *Bravo* Court reached this conclusion in stating that 12(b)(6) must be defeated if <u>any hypothetical situation is *conceivably* raised by the Complaint</u>. *Bravo at 750*, noting in headers [3], [4], & [5] the Washington Supreme Court has laid to rest any question of challenging facts in favor of "hypothetical's", "conceivable causes" and facts given "conceptual backdrops" is "legally sufficient to support Plaintiff's claim" (noting use of singular "claim") to defeat a motion for 12(b)(6), and even the Court's inclusion of *facts alleged for the first time on appellate review* (emphasis in original).

2.18    The Supreme Court (citing *Haberman & Orwick*) has unambiguously held that CR 12(b)(6) motions should be granted only "sparingly and with care." *Bravo at 750* (quotations by the Court).

/

MOTION TO RECONSIDER - 4

2536490223

2.19    For example, even if (in theory) the Defendant may have legitimate arguments for
"partial" Summary Judgment under RCW 19.36.110 (Motion at pg. 3, lines 9-25), it precludes
CR 12(b)(6) relief because the Defendant in that section Admits that Breach of Contract still
remains after Defendant's victory in court:

> Therefore, all the Group's claims except for breach of contract. . . fail as a matter of law
> under RCW 19.36.110. Motion at pg. 3, lines 9-25

2.20    On the record, Defendant's Admission to a cause of action for breach of contract,
automatically bars its motion by definitively establishing (by party Admission) "a" claim,
which shall defeat a disfavored CR 12(b)(6) motion.

2.21    Promissory Estoppel has been pled with conceivable recovery for promises (for
example promised loan "Extensions" pled in the Complaint) that the Defendant made *outside
of and distinct from* the loan contracts entered in writing.

2.21    Any one of the prior causes of action with detailed facts set forth in the Complaint may
defeat a 12(b)(6) motion.

1.34    Accordingly, the Plaintiff hereby requests the Court denies the Defendant's 12(b)(6)
motion as justice so requires.

### III.    EVIDENCE RELIED UPON

This motion is based on Exhibits 1 and court documents herein.

### IV.    PROPOSED ORDER

A proposed order granting the relief requested accompanies this motion dated 05/04/2009.

MOTION TO RECONSIDER - 5

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2536490223

1    WHEREFORE, having requested this Court's Reconsideration, the Plaintiff respectfully requests that all
     claims for relief in the Defendant's Motion under Civil Rule 12(b)(6) be denied upon reconsideration,
2    thus the Promissory Estoppel claim of Plaintiff shall not be dismissed.

3

4    DATED this ____ day of May 2009,

5

6

7

8    John Phillip Abrams, WSBA # 31068
     Attorney for the Co-Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


MOTION TO RECONSIDER - 6

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

2536490223

# EXHIBIT J

05/04/2009  17:47    2536490223          THE ABRAMS FIRM                    PAGE  11/21

• 2536490223
ISSUED 5/16/08

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

WASHINGTON DEPARTMENT OF FINANCIAL INSTITUTIONS

OLYMPIA, WA

|  | ) |  |
|---|---|---|
| In the Matter of | ) | ORDER TO |
|  | ) | CEASE AND DESIST |
| WESTSOUND BANK | ) |  |
| BREMERTON, WASHINGTON | ) | Docket No. FDIC-08-038b |
|  | ) |  |
| (INSURED STATE NONMEMBER BANK) | ) |  |
|  | ) |  |

Westsound Bank, Bremerton, Washington ("Bank"), having been advised of its right to a

NOTICE OF CHARGES AND OF HEARING detailing the unsafe or unsound banking practices

and violations of law and/or regulations alleged to have been committed by the Bank and of its

right to a hearing on the alleged charges under section 8(b)(1) of the Federal Deposit Insurance

Act ("Act"), 12 U.S.C. § 1818(b)(1), and the Revised Code of Washington, Anno. § 30.04.450

("RCW"), and having waived those rights, entered into a STIPULATION AND CONSENT TO

THE ISSUANCE OF AN ORDER TO CEASE AND DESIST ("CONSENT AGREEMENT")

with counsel for the Federal Deposit Insurance Corporation ("FDIC"),  and with the Director of

Banks for the Washington Department of Financial Institutions ("WDFI"), dated March 7, 2008,

whereby solely for the purpose of this proceeding and without admitting or denying the alleged

charges of unsafe or unsound banking practices and violations of law and/or regulations, the

2536490223

- 2 -

Bank consented to the issuance of an ORDER TO CEASE AND DESIST ("ORDER") by the

FDIC and the WDFI.

The FDIC and the WDFI considered the matter and determined that it had reason to

believe that the Bank had engaged in unsafe or unsound banking practices. The FDIC and the

WDFI, therefore, accepted the CONSENT AGREEMENT and issued the following:

### ORDER TO CEASE AND DESIST

IT IS HEREBY ORDERED, that the Bank, its institution-affiliated parties, as that term is

defined in section 3(u) of the Act, 12 U.S.C. § 1813(u), and its successors and assigns, cease and

desist from the following unsafe and unsound banking practices, as more fully set forth in the

Joint FDIC and WDFI Report of Examination ("ROE") dated October 1, 2007:

(a)    operating with management whose policies and practices are detrimental to the

Bank and jeopardize the safety of its deposits;

(b)    operating with a board of directors which has failed to provide adequate

supervision over and direction to the active management of the Bank;

(c)    operating with less than satisfactory capital in relation to the kind and quality of

assets held by the Bank;

(d)    operating with an inadequate loan valuation reserve;

(e)    operating with a large volume of poor quality loans;

(f)    engaging in unsatisfactory lending and collection practices;

(g)    operating in such a manner as to produce operating losses;

(h)    operating in such a manner as to produce low earnings;

(i)    operating with inadequate provisions for liquidity;

(j)    operating with inadequate internal routine and controls policies;

2536490223

- 3 -

(k)    Operating in violation of Part 323 of the FDIC's Rules and Regulations as more fully described in the ROE;

(l)    Operating in contravention of the Statement Concerning the Responsibility of Bank Directors and Officers as more fully described in the ROE;

(m)    Operating in contravention of Part 364 Appendix A of the FDIC's Rules and Regulations as more fully described in the ROE;

(n)    Operating in contravention of Part 365 Appendix A of the FDIC's Rules and Regulations as more fully described in the ROE;

(o)    Operating in contravention of the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing as more fully described in the ROE;

(p)    Operating in contravention of Financial Institution Letter ("FIL") 74-94 Interagency Guidelines on Real Estate Appraisals and Evaluations as more fully described in the ROE; and

(q)    Operating in contravention of FIL-104-2006 Commercial Real Estate Lending Joint Guidance as more fully described in the ROE.

IT IS FURTHER ORDERED, that the Bank, its institution-affiliated parties, and its successors and assigns, take affirmative action as follows:

1.    The Bank shall have and retain qualified management.

(a)    Each member of management shall have qualifications and experience commensurate with his or her duties and responsibilities at the Bank. Management shall include a chief executive officer with proven ability in managing a Bank of comparable size, and experience in upgrading a low quality loan portfolio, improving earnings, and other matters needing particular attention. Management shall also include a senior lending officer with

2536490223

- 4 -

significant appropriate lending, collection, and loan supervision experience, and experience in upgrading a low quality loan portfolio. Each member of management shall be provided appropriate written authority from the Bank's Board of Directors ("Board") to implement the provisions of the ORDER.

(b)    The qualifications of management shall be assessed on its ability to:

(i)    comply with the requirements of the ORDER;

(ii)    operate the Bank in a safe and sound manner;

(iii)    comply with applicable laws and regulations; and

(iv)    restore all aspects of the Bank to a safe and sound condition, including asset quality, management effectiveness, liquidity, earnings, and capital adequacy.

(c)    During the life of this ORDER, the Bank shall notify the Regional Director of the FDIC's San Francisco Regional Office ("Regional Director") and the Director of the WDFI ("Director") in writing when it proposes to add any individual to the Bank's Board or employs any individual as a senior executive officer. The notification must be received at least 30 days before such addition or employment is intended to become effective and should include a description of the background and experience of the individual or individuals to be added or employed.

(d)    Within 45 days from the effective date of this ORDER, the Bank's Board shall adopt an employee compensation plan after obtaining a written independent study of compensation paid to the Bank's executive, loan, and operations officers, and the Bank's Board. For the purposes of this paragraph, "compensation" refers to any and all salaries, bonuses, incentive compensation, and other benefits of every kind and nature whatsoever, whether paid directly or indirectly. The compensation plan and its implementation shall be in a form and

2536490223

- 5 -

manner acceptable to the Regional Director and the Director as determined at subsequent examinations and/or visitations.  At a minimum, the review shall include:

> (i)      An analysis of the management and personnel structure;

> (ii)     A critical analysis of each individual's background, experience, duties and responsibilities, and an appraisal of the individual's performance compared to the present level of compensation including incentive compensation;

> (iii)    A comparison of each officer's total compensation with compensation received by officers with similar responsibilities in similar institutions;

> (iv)     A determination of whether present executive officers are capable of implementing the Bank's Board directives and policies, operating within the constraints of laws and regulations, and operating the Bank in a prudent manner;

> (v)      An analysis of staffing adequacy; and

> (vi)     A review of Bank's Board members qualifications and committee structures.

> (e)      Within 60 days from the effective date of this ORDER, the Bank shall revise, adopt, and implement any bonus or incentive compensation plans for executive, loan, or operations officers to incorporate qualitative as well as profitability performance standards and shall be in a form and manner acceptable to the Regional Director and the Director.

> 2.      (a)      Within 30 days the Bank's Board shall increase its participation in the affairs of the Bank, assuming full responsibility for approval of sound policies and objectives and for the supervision of all of the Bank's activities, consistent with the role and expertise commonly expected for directors of Banks of comparable size.  This participation shall include

2536490223

- 6 -

meetings to be held no less frequently than monthly at which, at a minimum, the following areas shall be reviewed and approved:

        (i)      Reports of income and expenses;

        (ii)     New, overdue, renewed, insider, charged-off, and recovered loans;

        (iii)    Progress in reducing the level of adversely classified assets;

        (iv)    Progress with implementing corrective actions recommended by regulatory agencies and auditors;

        (v)     Asset concentrations; and

        (vi)    Liquidity levels and sources.

    (b)    Bank's Board minutes shall document these reviews and approvals, including the names of any dissenting directors.

    3.    While this ORDER is outstanding, the Bank shall maintain:

    (a)    A tier 1 capital to total assets leverage ratio ("Tier 1 Capital Ratio"), at least equal to or greater than, eight (8) percent; in accordance with Part 325 of the FDIC's Rules and Regulations;

    (b)    A tier 1 capital to risk-weighted assets ratio ("Tier 1 Risk-Based Capital Ratio") at least equal to or greater than 10 percent in accordance with Appendix A of Part 325 of the FDIC's Rules and Regulations, and

    (c)    A ratio of qualifying total capital to risk-weighted assets ("Total Risk-Based Capital Ratio") at least equal to or greater than 13 percent in accordance with Appendix A of Part 325 of the FDIC's Rules and Regulations.

2536490223

- 7 -

4.    While this ORDER is outstanding, the Bank shall not pay any dividends to the holding company without obtaining prior written consent from the Regional Director and the Director.

5.    (a)    Within 30 days from the effective date of this ORDER, the Bank shall increase its allowance for loan and lease losses as of third quarter 2007 by $13,300,000 and thereafter maintain its allowance for loan and lease losses at an adequate level.  Management will maintain an adequate allowance for loan and lease losses as determined at subsequent examinations.

(b)    Additionally, within 45 days from the effective date of this ORDER, the Bank's Board shall develop or revise, adopt and implement a comprehensive policy for determining the adequacy of the allowance for loans and lease losses.  For the purpose of this determination, the adequacy of the reserve shall be determined after the charge-off of all loans or other items classified "Loss."  The policy shall provide for a review of the allowance at least once each calendar quarter.  Said review should be completed at least ten (10) days prior to the end of each quarter, in order that the findings of the Bank's Board with respect to the loan and lease loss allowance may be properly reported in the quarterly Reports of Condition and Income.  The review should focus on the results of the Bank's internal loan review, loan loss experience, trends of delinquent and nonaccrual loans, an estimate of potential loss exposure of significant credits, concentrations of credit, and present and prospective economic conditions.  A deficiency in the allowance shall be remedied in the calendar quarter it is discovered, prior to submitting the Report of Condition and Income, by a charge to current operating earnings.  The minutes of the Bank's Board meeting at which such review is undertaken shall indicate the results of the review.  Upon completion of the review, the Bank shall increase and maintain its allowance for loan and

2536490223

- 8 -

lease losses consistent with the allowance for loans and lease loss policy established. Such policy and its implementation shall be satisfactory to the Regional Director and the Director.

6.    (a)    Within 30 days from the effective date of this ORDER, the Bank shall eliminate from its books, by charge-off or collections, all assets classified "Loss" and one-half of the assets classified "Doubtful" in the ROE dated October 1, 2007 that have not been previously collected or charged off. Elimination of these assets through proceeds of other loans made by the Bank is not considered collection for the purpose of this paragraph.

(b)    Within 90 days from the effective date of this ORDER, the Bank shall develop a written asset disposition plan for the reduction and collection of each asset classified "Substandard" or "Doubtful" in the ROE dated October 1, 2007. The plan shall address specific steps and time-frames for the reduction and collection of each "Substandard" and "Doubtful" asset. The plan shall be acceptable to the Regional Director and Director as determined at subsequent examinations.

(i)    Obtain new appraisals or evaluations as required by Part 323 of the FDIC's rules and regulations on properties collateralizing "Substandard" and "Doubtful" loans before determining the disposition plan for each loan;

(ii)    Inspections shall be obtained on all construction projects in-process to:

a)    Determine the completion percentage;

b)    Ascertain whether the projects are being constructed to original plans and specifications.

c)    Determine whether the projects are being built to applicable building codes.

2536490223

- 9 -

        d)    Determine the cost to complete construction to original plans and specifications and if sufficient undisbursed funds remain to complete the project to original plans and specifications.

        (c)    Within 60 days from the effective date of this ORDER, the Bank shall correct all deficiencies in the loans listed for "Special Mention" in the ROE dated October 1, 2007.

    7.    (a)    Beginning with the effective date of this ORDER, the Bank shall not extend, directly or indirectly, any additional credit to, or for the benefit of, any borrower who had a loan or other extension of credit from the Bank that has been charged off or classified "Loss" and is uncollected.

        (b)    Beginning with the effective date of this ORDER, the Bank shall not extend, directly or indirectly any additional credit to, or for the benefit of, any borrower who has a loan or other extension of credit from the Bank that has been classified, in whole or part, "Substandard" or "Doubtful" in the ROE dated October 1, 2007, without the prior approval of a majority of the Bank's Board or the Loan Committee of the Bank. Before approving additional credit extensions on construction loans, management will obtain current appraisals on construction projects; determine construction progress toward completion; ensure that construction projects are being completed according to original plans, specifications, and local building codes; and obtain appropriate documentation to support the borrowers' ability to repay the loan.

        (c)    The Bank's Board or Loan Committee shall not approve any extension of credit, or additional credit to a borrower in paragraph (b) above without first collecting in cash all interest due.

2536490223

1

2

3

4

5

6

7          IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
           IN AND FOR THE COUNTY OF KITSAP
8

9   BECKER FAMILY BUILDERS            No. 09-2-00662-0
    CO-PLAINTIFFS GROUP,
10                        Plaintiff,          ORDER
11            v.
12  WESTSOUND BANK, and
    WSB FINANCIAL GROUP, INC.,
13                        Defendant.

14          THIS ORDER having come upon hearing on above-named Plaintiff's Motion to Reconsider,

15  and the Court having reviewed the evidence herein, the Court finds that the Court's prior Order

16  granting Defendant partial relief to dismiss the Promssory Estoppel Claim is herby vacated

17
    making a complete denial of Plaintiff's requested relief.
18
19          This motion is based on Exhibits 1 and court documents herein and the Becker

20  Defendant matter under the same presiding Judge, including Declaration portions that are

21  applicable

22          NOW THEREFORE, it is hereby ORDERED that the Court's prior Order granting Order

23  granting Defendant partial relief to dismiss the Promssory Estoppel Claim is herby vacated

24  making a complete denial of Plaintiff's requested relief.
25


ORDER - 1                          THE ABRAMS FIRM
                                              John Phillip Abrams
                                              PO 1494 Gig Harbor, WA 98335
                                              (253) 222-3712 - Facsimile: 649-0223

2536490223

1   DONE IN OPEN COURT this _____ day of May 2009.

2

3   Presented by:

                                                       _____

4   John Phillip Abrams, WSBA# 31068                   PRESIDING JUDGE
  Attorney for the Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 2                           THE ABRAMS FIRM

                                                      John Phillip Abrams
                                            PO 1494 Gig Harbor, WA 98335
                                    (253) 222-3712 • Facsimile: 649-0223

2536490223

# THE ABRAMS FIRM
## JOHN PHILLIP ABRAMS
### ATTORNEY AT LAW

---

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| ATTN: | FROM: |
| DAVID TIFT | JOHN ABRAMS |
| FAX NUMBER: | DATE: |
| 206 583-0359 | 5/4/09 |
| COMPANY: | TOTAL NO. OF PAGES INCLUDING COVER: |
| RYAN, SWANSON & CLEVELAND, PLLC | 21 |
| PHONE NUMBER: | |

RE:
  WESTSOUND V. BECKER

---

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ FOR YOUR FILE

---

Please find our Motion for Reconsideration filed with the Clerk.

Sincerely,

Amy L. Abrams

~If any of the pages are received in error please send a return-fax notice immediately~

This facsimile may contain information that is privileged and confidential. Use is restricted to the above named individual or entity for purposes that may be, and are often, limited by prior agreement. Any copying (other than for a permitted use) or any distribution whatsoever, is strictly prohibited without express, written consent of the sender.

05/04/2009  17:47    2536490223                 THE ABRAMS FIRM                    PAGE  02/21

2536490223

1

2

3

4

5

6          THE SUPERIOR COURT OF THE STATE OF WASHINGTON
7               IN AND FOR THE COUNTY OF KITSAP

8    BECKER FAMILY BUIDERS                No. 09-2-00662-0
     CO-PLAINTIFFS GROUP
9                       Plaintiff,          NOTE FOR MOTION

10          v.

11
     WESTSOUND BANK; WSB FINANCIAL
12   GROUP, INC.
                        Defendant.
13

14

15   TO THE CLERK OF THE COURT AND
     TO: DAVID TIFT
16
     PLEASE TAKE NOTICE that the undersigned will bring on for hearing:
17
     NATURE OF MOTION:  Plaintiff's Motion for Reconsideration
18
     The hearing is to be held:
19
          DATE: May 29, 2009   TIME: 1:30pm       *Please place on Judge*
20   AT:    Superior Court of Kitsap County        *Haberly's Calander,*
            614 Division Street
21          Fort Orchard, WA 98366                           *Thank*
                                                              *you,*
22   COURT REPORTER REQUESTED:            ☑Yes ☐No           *J.P.A*
23   ELECTRONIC RECORDER ACCEPTABLE:      ☐Yes ☑No
24   COURT COMMISSIONER MAY HEAR THIS MOTION:  ☐Yes ☑No

     NOTE FOR MOTION                          THE ABRAMS FIRM
                                              John Phillip Abrams
     Page 1                                   PO 1494 Gig Harbor, WA 98335
                                              (253) 222-3712 - Facsimile: 649-0223

2536490223



The Abrams Firm

John Phillip Abrams, WSBA# 31068
Attorney for the Plaintiff

5    Names, addresses, telephone numbers of all attorneys in action:

6    David Tift
     RYAN, SWANSON & CLEVELAND, PLLC
7    1201 Third Ave, Suite 3400
     Seattle, WA 98101
8    (206) 464-4224
     Fax (206) 583-0359

NOTE FOR MOTION

Page 2

THE ABRAMS FIRM
John Phillip Abrams
PO 1494 Gig Harbor, WA 98335
(253) 222-3712 - Facsimile: 649-0223

# EXHIBIT E

1

2

3

4

5

6

7        SUPERIOR COURT OF WASHINGTON IN AND FOR KITSAP COUNTY

8

9    BECKER FAMILY BUILDERS CO-PLAINTIFFS
     GROUP,

                                                    NO. 09-2-00662-0
10                              Plaintiff,
                                                    WESTSOUND BANK'S ANSWER
11        v.                                        AND AFFIRMATIVE DEFENSES

12   WESTSOUND BANK and WSB FINANCIAL
     GROUP, INC.,
13
                                Defendants.
14

15        COMES NOW Defendant Westsound Bank (the "Bank") by and through its counsel

16   of record, in answer to Plaintiff's Complaint for Damages for Negligent Misrepresentation,

17   Violations of the Unfair Business Practices-Consumer Protection Act, Breach of Contract,

18   Promissory Estoppel, and Unjust Enrichment (the "Complaint") admits, denies, and states as

19   follows:

20        1.    Answering paragraph 1.1, the Bank admits that it entered into certain loan

21   contracts with certain of the plaintiffs identified in paragraph 1.1.  Except as expressly

22   admitted, the Bank denies each and every allegation therein and all inferences to be drawn

23   therefrom.

24        2.    Answering paragraph 1.2, the Bank admits that it is a Washington State

25   chartered bank doing business in Kitsap County, Washington, and admits that it loaned funds

26   to plaintiffs for construction purposes.  Except as expressly admitted, the Bank denies each

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1  and every statement therein and all inferences to be drawn therefrom.

2      3.      Answering paragraph 1.3, the Bank admits that venue and jurisdiction are
3  proper in this Court. Except as expressly admitted, the Bank denies each and every allegation
4  therein and all inferences to be drawn therefrom.

5      4.      Answering paragraph 1.4, the Bank denies each and every allegation therein
6  and all inferences to be drawn therefrom.

7      5.      Answering paragraph 2.1, the Bank is without sufficient information to form a
8  belief as to the truth or falsity and therefore denies the same.

9      6.      Answering paragraphs 2.2 and 2.3, the Bank admits that it has had a number of
10  loan contracts with plaintiffs. Except as expressly admitted, the Bank denies each and every
11  allegation therein and all inferences to be drawn therefrom.

12      7.      Answering paragraph 2.4, the Bank admits that it previously loaned money to
13  plaintiffs. Except as expressly admitted, the Bank denies each and every allegation therein
14  and all inferences to be drawn therefrom.

15      8.      Answering paragraphs 2.5 through 2.8, the Bank admits that it would disburse
16  loan funds based on draws from the borrowers, and based on other information including but
17  not limited to inspections of the premises. Except as expressly admitted, the Bank denies
18  each and every allegation therein and all inferences to be drawn therefrom.

19      9.      Answering paragraph 2.9, the Bank admits that it became subject to federal
20  regulations. Except as expressly admitted, the Bank denies each and every allegation therein
21  and all inferences to be drawn therefrom.

22      10.      Answering paragraphs 2.10 through 2.16, the Bank denies each and every
23  allegation therein and all inferences to be drawn therefrom.

24      11.      Answering paragraphs 2.17 and 2.18, these paragraphs contain legal
25  conclusions to which no answer is required. To the extent an answer is required, the Bank
26  denies each and every allegation therein and all inferences to be drawn therefrom.

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 2

572452.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | fax 206.583.0359

1    12.    Answering paragraph 2.19, the Bank denies each and every allegation therein
2    and all inferences to be drawn therefrom.

3    13.    Answering paragraphs 2.20 – 2.21, these paragraphs contain legal conclusions
4    to which no answer is required. To the extent an answer is required, the Bank denies each and
5    every allegation therein and all inferences to be drawn therefrom.

6    14.    Answering paragraph 2.22, the Bank admits that it entered into loan contracts
7    with plaintiffs. Except as expressly admitted, the Bank denies each and every allegation
8    therein and all inferences to be drawn therefrom.

9    15.    Answering paragraph 2.23, the Bank admits that it became subject to federal
10   regulations. Except as expressly admitted, the Bank denies each and every allegation therein
11   and all inferences to be drawn therefrom.

12   16.    Answering paragraph 2.24, the Bank denies each and every allegation therein
13   and all inferences to be drawn therefrom.

14   17.    Answering paragraph 2.25, the Bank admits that loan terms required payment
15   of interest and loan fees. Except as expressly admitted, the Bank denies each and every
16   allegation therein and all inferences to be drawn therefrom.

17   18.    Answering paragraph 2.26, the Bank states that the written loan documents
18   between it and the plaintiffs speak for themselves. Except as expressly stated, the Bank
19   denies each and every allegation therein and all inferences to be drawn therefrom.

20   19.    Answering paragraph 2.27, the Bank denies each and every allegation therein
21   and all inferences to be drawn therefrom.

22   20.    Answering paragraph 2.28, the Bank denies each and every allegation therein
23   and all inferences to be drawn therefrom.

24   21.    Answering paragraph 2.29, the Bank is without sufficient information to form
25   a belief as to the truth or falsity of Mr. Becker's contact with the Washington State Banking
26   Commission therefore denies the same. The Bank denies each and every other allegation

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 3

572452.01



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1   therein and all inferences to be drawn therefrom.

2       22.    Answering paragraph 2.30, the Bank denies each and every allegation therein
3 and all inferences to be drawn therefrom.

4       23.    Answering paragraphs 2.31 through 2.32, the Bank is without sufficient
5 information to form a belief as to the truth or falsity and therefore denies the same.

6       24.    Answering paragraph 2.33, the Bank denies each and every allegation therein
7 and all inferences to be drawn therefrom.

8       25.    Answering paragraph 2.34, this paragraph asserts legal conclusions to which
9 no answer is required.  To the extent an answer is required, the Bank denies each and every
10 allegation therein and all inferences to be drawn therefrom.

11       26.    Answering paragraph 3.1, the Bank admits that it performed well.  Except as
12 expressly admitted, the Bank denies each and every allegation therein and all inferences to be
13 drawn therefrom.

14       27.    Answering paragraph 3.2, the Bank states that the loan documents speak for
15 themselves.  Except as expressly stated, the Bank denies each and every allegation therein and
16 all inferences to be drawn therefrom.

17       28.    Answering paragraphs 3.3 through 3.10, the Bank states that the terms in its
18 agreement with plaintiffs are in the loan documents.  Except as expressly stated, the Bank
19 denies each and every allegation therein and all inferences to be drawn therefrom.

20       29.    Answering paragraph 3.11, the Bank denies each and every allegation therein
21 and all inferences to be drawn therefrom.

22       30.    Answering paragraph 3.12, the Bank states that the loan documents speak for
23 themselves.  Except as expressly stated, the Bank denies each and every allegation therein and
24 all inferences to be drawn therefrom.

25       31.    Answering paragraphs 3.13 through– 3.14, the Bank denies each and every
26 allegation therein and all inferences to be drawn therefrom.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

32.     Answering paragraph 3.15, the Bank is without sufficient information to form a belief as to the truth or falsity of whether plaintiffs put personal resources into their home projects and therefore denies the same. The Bank denies each and every other allegation therein and all inferences to be drawn therefrom.

33.     Answering paragraph 3.16, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

34.     Answering paragraph 3.17, this paragraph contains legal conclusions to which no answer is required. To the extent an answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

35.     Answering paragraphs 4.1 through 4.4, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

36.     Answering paragraph 4.5, the Bank states that the terms of its agreements with plaintiffs are in the loan documents. Except as expressly admitted, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

37.     Answering paragraphs 4.6 through 4.14, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

38.     Answering paragraph 4.15, the Bank states that the loan terms regarding interest speak for themselves. Except as expressly stated, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

39.     Answering paragraphs 4.16 through 4.26, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

40.     Answering paragraph 4.27, the Bank states that the loan agreements speak for themselves. Except as expressly stated, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

41.     Answering paragraphs 4.28 and 4.29, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE DEFENSES - 5

572452.01

Ryan, Swenson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1    42.    Answering paragraph 4.30, this paragraph contains legal conclusions to which

2    no answer is required.  To the extent an answer is required, the Bank denies each and every

3    allegation therein and all inferences to be drawn therefrom.

4    43.    Answering paragraphs 5.1 through 5.5, the "Plaintiff" referenced therein is

5    unnamed and has not been identified, regardless, the Bank denies each and every allegation

6    therein and all inferences to be drawn therefrom.

7    44.    Answering paragraphs 5.6 through 5.10, the Bank denies each and every

8    allegation therein and all inferences to be drawn therefrom.

9    45.    Answering paragraphs 5.11 through 5.15, the "Plaintiff" referenced therein is

10    unnamed and has not been identified, regardless, the Bank denies each and every allegation

11    therein and all inferences to be drawn therefrom.

12    46.    Answering paragraphs 5.16 and 5.17, the Bank denies each and every

13    allegation therein and all inferences to be drawn therefrom.

14    47.    Answering paragraph 5.18, the Bank is without sufficient information to form

15    a belief as to the truth or falsity of plaintiff's talking to other lenders, therefore denies the

16    same.  Except as expressly stated, the Bank denies each and every allegation therein and all

17    inferences to be drawn therefrom.

18    48.    Answering paragraphs 5.19 through 5.21, the Bank denies each and every

19    allegation therein and all inferences to be drawn therefrom.

20    49.    Answering paragraph 5.22, this paragraph contains legal conclusions to which

21    no answer is required.  To the extent an answer is required, the Bank denies each and every

22    allegation therein and all inferences to be drawn thereform.

23    50.    Answering paragraph 6.1, the Bank admits it has met with some of the

24    plaintiffs.  Except as expressly admitted, the Bank denies each and every allegation therein

25    and all inferences to be drawn therefrom.

26    51.    Answering paragraphs 6.2 through 6.15, the Bank denies each and every

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 6

573453.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1  allegation therein and all inferences to be drawn therefrom.

2      52.    Answering paragraphs 6.16 through 6.22, the "Plaintiff" referenced therein is

3  unnamed and has not been identified, regardless, the Bank denies each and every allegation

4  therein and all inferences to be drawn therefrom.

5      53.    Answering paragraphs 6.23 through 6.24, the Bank denies each and every

6  allegation therein and all inferences to be drawn therefrom.

7      54.    Answering paragraph 6.25, the "contractor" referenced therein is unnamed and

8  has not been identified, regardless, the Bank denies each and every allegation therein and all

9  inferences to be drawn therefrom.

10     55.    Answering paragraphs 7.1 through 7.11, the "builder and wife" referenced

11  therein are unnamed and have not been identified, regardless, the Bank denies each and every

12  allegation therein and all inferences to be drawn therefrom.

13     56.    Answering paragraph 7.12, this paragraph contains legal conclusions to which

14  no answer is required.  To the extent an answer is required, the Bank denies each and every

15  allegation therein and all inferences to be drawn therefrom.

16     57.    Answering paragraphs 7.13 through 7.16, the Bank admits that it has employed

17  a person named "Heath."  Except as expressly admitted, the Bank denies each and every other

18  allegation therein and all inferences to be drawn therefrom.

19     58.    Answering paragraphs 7.17 through 7.22, the Bank denies each and every

20  allegation therein and all inferences to be drawn therefrom.

21     59.    Answering paragraphs 8.1 through 8.3, the Bank denies each and every

22  allegation therein and all inferences to be drawn therefrom.

23     60.    Answering paragraph 8.4, this paragraph contains legal conclusions to which

24  no answer is required.  To the extent an answer is required, the Bank denies each and every

25  allegation therein and all inferences to be drawn therefrom.

26     61.    Answering paragraph 8.5, the Bank denies each and every allegation therein

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 7

572452.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1 | and all inferences to be drawn therefrom.

2 | 62. Answering paragraphs 8.6 through 8.9, the "husband and wife" referenced
3 | therein are unnamed and have not been identified, regardless, the Bank denies each and every
4 | allegation therein and all inferences to be drawn therefrom.

5 | 63. Answering paragraph 8.10, the Bank denies each and every allegation therein
6 | and all inferences to be drawn therefrom.

7 | 64. Answering paragraph 8.11, this paragraph contains legal conclusions to which
8 | no answer is required. To the extent an answer is required, the Bank denies each and every
9 | allegation therein and all inferences to be drawn therefrom.

10 | 65. Answering paragraph 8.12, the "Plaintiff" referenced therein is unnamed and
11 | has not been identified, regardless, the Bank denies each and every allegation therein and all
12 | inferences to be drawn therefrom.

13 | 66. Answering paragraph 8.13, this paragraph contains legal conclusions to which
14 | no answer is required. To the extent an answer is required, the Bank denies each and every
15 | allegation therein and all inferences to be drawn therefrom.

16 | 67. Answering paragraph 8.14, the "builder" referenced therein is unnamed and
17 | has not been identified, regardless, the Bank denies each and every allegation therein and all
18 | inferences to be drawn therefrom.

19 | 68. Answering paragraph 8.15, the "Plaintiff" referenced therein is unnamed and
20 | has not been identified, regardless, the Bank denies each and every allegation therein and all
21 | inferences to be drawn therefrom.

22 | 69. Answering paragraph 8.16, the Bank denies each and every allegation therein
23 | and all inferences to be drawn therefrom.

24 | 70. Answering paragraph 8.17, the "Plaintiff/Realtor" referenced therein is
25 | unnamed and has not been identified, regardless, the Bank denies each and every allegation
26 | therein and all inferences to be drawn therefrom.

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 8

572452.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

71.    Answering paragraphs 8.18 through 8.21, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

72.    Answering paragraphs 9.1 through 9.3, these paragraphs contain legal conclusions to which no answer is required. To the extent an answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

73.    Answering paragraphs 9.4 and 9.5, the Bank states it acted in good faith. Except as expressly stated, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

74.    Answering paragraphs 9.6 through 9.12, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

75.    Answering paragraph 9.13, this paragraph contains legal conclusions to which no answer is required. To the extent an answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

76.    Answering paragraph 10.1, this paragraph is a legal standard to which no answer is required.

77.    Answering paragraph 10.2, this paragraph contains legal conclusions to which no answer is required. To the extent and answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

78.    There are no paragraphs 10.3 or 10.4 to which the Bank can respond.

79.    Answering paragraphs 10.5 through 10.12, these paragraphs contain legal conclusions to which no answer is required. To the extent an answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

80.    Answering paragraph 10.13, this paragraph contains legal conclusion to which no response is required. To the extent an answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

81.    There is no paragraph 10.14 to which the Bank can respond.

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 9

572452.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

82.    Answering paragraph 10.15, this paragraph contains legal conclusions to which no response is required.  To the extent an answer is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

83.    Answering paragraph 10.17, which states the cause of action for promissory estoppel, this Court dismissed that cause of action in its April 24, 2009 Memorandum Opinion, thus no answer is required.

84.    Answering paragraph 10.16, this paragraph contains legal conclusions to which no response is required.  To the extent a response is required, the Bank denies each and every allegation therein and all inferences to be drawn therefrom.

**AFFIRMATIVE DEFENSES**

In further answer to the Complaint and by way of affirmative defense, the Bank alleges as follows:

1.    Failure to state a claim upon which relief can be granted;

2.    Plaintiffs have breached their contracts with the Bank;

3.    Waiver and estoppel;

4.    Failure to mitigate damages;

5.    Contributory fault;

6.    Contributory negligence;

7.    The Bank acted according to the terms of the loan documents;

8.    Any wrongdoing is the fault of other parties or non-parties;

9.    Disclaimer;

10.    Failure of consideration;

11.    RCW 19.36.110;

12.    Verbal promises have no effect;

13.    Justification;

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 10

572452.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

14.    The Bank acted subject to federal regulations; and

15.    Statute of limitations.

### PRAYER FOR RELIEF

WHEREFORE, having fully answered the Complaint, the Bank prays for the following relief:

1.    For judgment of dismissal of the Complaint with prejudice;

2.    For an award of the Bank's reasonable attorneys' fees, litigation expenses, and costs incurred in defending this action as allowable by law; and

3.    For such other and further relief as the Court deems just and equitable.

DATED this 4th day of May, 2009.

RYAN, SWANSON & CLEVELAND, PLLC

By _____
    David L. Tift, WSBA #13213
    Britenae Pierce, WSBA #34032
    Attorneys for Defendant Westsound Bank

    1201 Third Avenue, Suite 3400
    Seattle, Washington 98101-3034
    Telephone: (206) 464-4224
    Facsimile: (206) 583-0359
    tift@ryanlaw.com
    pierce@ryanlaw.com

WESTSOUND BANK'S ANSWER AND AFFIRMATIVE
DEFENSES - 11

572452.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1
2
3
4
5
6
7
8

SUPERIOR COURT OF WASHINGTON IN AND FOR KITSAP COUNTY

9  BECKER FAMILY BUILDERS CO-PLAINTIFFS GROUP,
10                                                        NO.  09-2-00662-0
                                      Plaintiff,
11                                                       **DECLARATION OF SERVICE**
12       v.
     WESTSOUND BANK and WSB FINANCIAL
13   GROUP, INC.,
14                                      Defendants.
15

       I hereby declare as follows:
16
       1.      I am a citizen of the United States and a resident of the state of Washington.  I
17
am over the age of 18 years and not a party to the within action.  I am employed by the law
18
firm of Ryan, Swanson & Cleveland, PLLC, 1201 Third Avenue, Suite 3400, Seattle,
19
Washington, 98101-3034.
20
       2.      On the 4th day of May, 2009, I caused to be served upon counsel of record at
21
the address and in the manner described below the following documents:
22
       WESTSOUND BANK'S ANSWER AND AFFIRMATIVE DEFENSES;
23       AND
24       DECLARATION OF SERVICE
25
26

DECLARATION OF SERVICE - 1

RS  Ryan, Swanson & Cleveland, PLLC
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101-3034
    206.464.4224  |  Fax 206.583.0359

| | | | |
|---|---|---|---|
| 1 | John Phillip Abrams | X | U.S. Mail |
| | The Abrams Firm | | Hand Delivery |
| 2 | PO Box 1494 | | E-mail |
| | Gig Harbor, WA 98335 | X | Facsimile |
| 3 | | | Federal Express |
| 4 | | | |
| | Thomas A. Sterken Esq. | | U.S. Mail |
| 5 | Keller Rohrback L.L.P. | X | Hand Delivery |
| | 1201 Third Avenue, Suite 3200 | | E-mail |
| 6 | Seattle, WA 98101-3052 | | Facsimile |
| 7 | | | Federal Express |

8

9      I declare under penalty of perjury under the laws of the state of Washington that the

10 foregoing is true and correct.

11      DATED this 4th day of April, 2009, at Seattle, Washington.

12

13                                    Susan Smith
                                      _____
14                                    Susan Smith

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF SERVICE - 2

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

572216.01

# EXHIBIT F

FILED
KITSAP COUNTY CLERK

2009 MAY -7 PM 4: 18

DAVID W. PETERSON

1
2
3
4
5
6
7

SUPERIOR COURT OF WASHINGTON IN AND FOR KITSAP COUNTY

8
9
10
11
12
13
14
15

BECKER FAMILY BUILDERS CO-
PLAINTIFFS GROUP,

                         Plaintiff,

    v.

WESTSOUND BANK, and WSB
FINANCIAL GROUP, INC.,

                         Defendants.

No. 09-2-00662-0

DEFENDANT WSB FINANCIAL
GROUP, INC.'S ANSWER AND
AFFIRMATIVE DEFENSES

16    COMES NOW defendant WSB Financial Group Inc. (hereinafter "WSB"), by and

17  through its attorneys, Keller Rohrback L.L.P., and, for its answer to plaintiff's Complaint,

18  states as follows:

19                          I.    ANSWER

20    1.    Answering paragraph 1.1 of the Complaint, to the extent it is directed toward

21  WSB, WSB is without sufficient information to form a belief as to the truth of the allegations

22  contained therein and, therefore, denies the same.

23    2.    Answering paragraph 1.2 of the Complaint, to the extent it is directed toward

24  WSB, WSB admits Westsound Bank is a Washington chartered bank doing business in Kitsap

25
26  County.  WSB objects to plaintiffs' collective reference of WSB with other separate legal

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 1

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

ORIGINAL

1   entities and denies these allegations.  WSB is providing answers to the Complaint for itself

2   only.  WSB is without sufficient information to form a belief as to the truth of the remaining

3   allegations contained therein and, therefore, denies the same.

4           3.      Answering paragraph 1.3 of the Complaint, to the extent it is directed toward

5   WSB, WSB is without sufficient information to form a belief as to the truth of the allegations

6

7   contained therein and, therefore, denies the same.

8           4.      Answering paragraph 1.4 of the Complaint, to the extent it is directed toward

9   WSB, WSB denies the allegations in paragraph 1.4.

10          5.      Answering paragraph 2.1 of the Complaint, to the extent it is directed toward

11  WSB, WSB denies the allegations as they relate to WSB.

12          6.      Answering paragraph 2.2 of the Complaint, to the extent it is directed toward

13

14  WSB, WSB denies the allegations as they relate to WSB.

15          7.      Answering paragraph 2.3 of the Complaint, to the extent it is directed toward

16  WSB, WSB denies the allegations as they relate to WSB.

17          8.      Answering paragraph 2.4 of the Complaint, to the extent it is directed toward

18  WSB, WSB denies the allegations as they relate to WSB.

19          9.      Answering paragraph 2.5 of the Complaint, to the extent it is directed toward

20

21  WSB, WSB denies the allegations as they relate to WSB.

22          10.     Answering paragraph 2.6 of the Complaint, to the extent it is directed toward

23  WSB, WSB denies the allegations as they relate to WSB.

24          11.     Answering paragraph 2.7 of the Complaint, to the extent it is directed toward

25  WSB, WSB denies the allegations as they relate to WSB.

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 2
N:\CLIENTS\23542\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

12.    Answering paragraph 2.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

13.    Answering paragraph 2.9 of the Complaint, to the extent it is directed toward WSB, WSB admits that Westsound Bank became subject to federal regulation.  WSB denies the remaining allegations as they relate to WSB.

14.    Answering paragraph 2.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

15.    Answering paragraph 2.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

16.    Answering paragraph 2.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

17.    Answering paragraph 2.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

18.    Answering paragraph 2.14 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

19.    Answering paragraph 2.15 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

20.    Answering paragraph 2.16 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

21.    Paragraph 2.17 of the Complaint contains legal conclusions to which no answer is required.  To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 3

N:\CLIENTS\23542\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

22.    Paragraph 2.18 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

23.    Answering paragraph 2.19 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

24.    Paragraph 2.20 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

25.    Paragraph 2.21 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

26.    Answering paragraph 2.22 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

27.    Answering paragraph 2.23 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

28.    Answering paragraph 2.24 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

29.    Answering paragraph 2.25 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

30.    Answering paragraph 2.26 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

31.    Answering paragraph 2.27 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 4
N:\CLIENTS\23842\BeckerAnswer.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

32.     Answering paragraph 2.28 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

33.     Answering paragraph 2.29 of the Complaint, to the extent it is directed toward WSB, WSB is without sufficient information to form a belief as to the truth of the allegations contained therein regarding plaintiffs' contact with Washington State Banking Commission, and, therefore, denies the same.  WSB denies the remaining allegations in paragraph 2.29.

34.     Answering paragraph 2.30 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

35.     Answering paragraph 2.31 of the Complaint, to the extent it is directed toward WSB, WSB is without sufficient information to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

36.     Answering paragraph 2.32 of the Complaint, to the extent it is directed toward WSB, WSB is without sufficient information to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

37.     Answering paragraph 2.33 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

38.     Answering paragraph 2.34 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

39.     Answering paragraph 3.1 of the Complaint, to the extent it is directed toward WSB, WSB is without sufficient information to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

40.     Answering paragraph 3.2 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 5

N:\CLIENTS\23542\Becker\answer.doc

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

41.     Answering paragraph 3.3 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

42.     Answering paragraph 3.4 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

43.     Answering paragraph 3.5 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

44.     Answering paragraph 3.6 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

45.     Answering paragraph 3.7 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

46.     Answering paragraph 3.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

47.     Answering paragraph 3.9 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

48.     Answering paragraph 3.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

49.     Answering paragraph 3.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

50.     Answering paragraph 3.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

51.     Answering paragraph 3.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 6

N:\CLIENTS\23942\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

52.     Answering paragraph 3.14 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

53.     Answering paragraph 3.15 of the Complaint, to the extent it is directed toward WSB, WSB is without sufficient information to form a belief as to the truth of the allegations contained therein regarding plaintiffs' use of personal resources, and, therefore, denies the same. WSB denies the remaining allegations in paragraph 3.15.

54.     Answering paragraph 3.16 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

55.     Answering paragraph 3.17 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

56.     Answering paragraph 4.1 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

57.     Answering paragraph 4.2 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

58.     Answering paragraph 4.3 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

59.     Answering paragraph 4.4 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

60.     Answering paragraph 4.5 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

61.     Answering paragraph 4.6 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 7
N:\CLIENTS\23847\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

62.    Answering paragraph 4.7 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

63.    Answering paragraph 4.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

64.    Answering paragraph 4.9 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

65.    Answering paragraph 4.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

66.    Answering paragraph 4.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

67.    Answering paragraph 4.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

68.    Answering paragraph 4.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

69.    Answering paragraph 4.14 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

70.    Answering paragraph 4.15 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

71.    Answering paragraph 4.16 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

72.    Answering paragraph 4.17 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    73.    Answering paragraph 4.18 of the Complaint, to the extent it is directed toward

2    WSB, WSB denies the allegations as they relate to WSB.

3    74.    Answering paragraph 4.19 of the Complaint, to the extent it is directed toward

4    WSB, WSB denies the allegations as they relate to WSB.

5

6    75.    Answering paragraph 4.20 of the Complaint, to the extent it is directed toward

7    WSB, WSB denies the allegations as they relate to WSB.

8    76.    Answering paragraph 4.21 of the Complaint, to the extent it is directed toward

9    WSB, WSB denies the allegations as they relate to WSB.

10    77.    Answering paragraph 4.22 of the Complaint, to the extent it is directed toward

11    WSB, WSB denies the allegations as they relate to WSB.

12    78.    Answering paragraph 4.23 of the Complaint, to the extent it is directed toward

13

14    WSB, WSB denies the allegations as they relate to WSB.

15    79.    Answering paragraph 4.24 of the Complaint, to the extent it is directed toward

16    WSB, WSB denies the allegations as they relate to WSB.

17    80.    Answering paragraph 4.25 of the Complaint, to the extent it is directed toward

18    WSB, WSB denies the allegations as they relate to WSB.

19

20    81.    Answering paragraph 4.26 of the Complaint, to the extent it is directed toward

21    WSB, WSB denies the allegations as they relate to WSB.

22    82.    Answering paragraph 4.27 of the Complaint, to the extent it is directed toward

23    WSB, WSB denies the allegations as they relate to WSB.

24    83.    Answering paragraph 4.28 of the Complaint, to the extent it is directed toward

25    WSB, WSB denies the allegations as they relate to WSB.

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 9

N:\CLIENTS\23847\Becker\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101-3052
TELEPHONE (206) 623-1900
FACSIMILE: (206) 623-3384

84.     Answering paragraph 4.29 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

85.     Answering paragraph 4.30 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

86.     Answering paragraph 5.1 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

87.     Answering paragraph 5.2 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

88.     Answering paragraph 5.3 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

89.     Answering paragraph 5.4 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

90.     Answering paragraph 5.5 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

91.     Answering paragraph 5.6 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

92.     Answering paragraph 5.7 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

93.     Answering paragraph 5.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

94.     Answering paragraph 5.9 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 10

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

95.    Answering paragraph 5.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

96.    Answering paragraph 5.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

97.    Answering paragraph 5.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

98.    Answering paragraph 5.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

99.    Answering paragraph 5.14 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

100.    Answering paragraph 5.15 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

101.    Answering paragraph 5.16 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

102.    Answering paragraph 5.17 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

103.    Answering paragraph 5.18 of the Complaint, to the extent it is directed toward WSB, WSB is without sufficient information to form a belief as to the truth of the allegations contained therein regarding plaintiffs' contact with other Lendees, and, therefore, denies the same. WSB denies the remaining allegations in paragraph 5.18.

104.    Answering paragraph 5.19 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 11

N:\CLIENTS\23842\3ECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

105.    Answering paragraph 5.20 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

106.    Answering paragraph 5.21 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

107.    Answering paragraph 5.22 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

108.    Answering paragraph 6.1 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

109.    Answering paragraph 6.2 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

110.    Answering paragraph 6.3 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

111.    Answering paragraph 6.4 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

112.    Answering paragraph 6.5 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

113.    Answering paragraph 6.6 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

114.    Answering paragraph 6.7 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

115.    Answering paragraph 6.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 12

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

116.    Answering paragraph 6.9 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

117.    Answering paragraph 6.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

118.    Answering paragraph 6.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

119.    Answering paragraph 6.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

120.    Answering paragraph 6.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

121.    Answering paragraph 6.14 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

122.    Answering paragraph 6.15 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

123.    Answering paragraph 6.16 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

124.    Answering paragraph 6.17 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

125.    Answering paragraph 6.18 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

126.    Answering paragraph 6.19 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 13

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    127.    Answering paragraph 6.20 of the Complaint, to the extent it is directed toward

2    WSB, WSB denies the allegations as they relate to WSB.

3    128.    Answering paragraph 6.21 of the Complaint, to the extent it is directed toward

4    WSB, WSB denies the allegations as they relate to WSB.

5

6    129.    Answering paragraph 6.22 of the Complaint, to the extent it is directed toward

7    WSB, WSB denies the allegations as they relate to WSB.

8    130.    Answering paragraph 6.23 of the Complaint, to the extent it is directed toward

9    WSB, WSB denies the allegations as they relate to WSB.

10    131.    Answering paragraph 6.24 of the Complaint, to the extent it is directed toward

11    WSB, WSB denies the allegations as they relate to WSB.

12

13    132.    Answering paragraph 6.25 of the Complaint, to the extent it is directed toward

14    WSB, WSB denies the allegations as they relate to WSB.

15    133.    Answering paragraph 7.1 of the Complaint, to the extent it is directed toward

16    WSB, WSB denies the allegations as they relate to WSB.

17    134.    Answering paragraph 7.2 of the Complaint, to the extent it is directed toward

18    WSB, WSB denies the allegations as they relate to WSB.

19    135.    Answering paragraph 7.3 of the Complaint, to the extent it is directed toward

20    WSB, WSB denies the allegations as they relate to WSB.

21

22    136.    Answering paragraph 7.4 of the Complaint, to the extent it is directed toward

23    WSB, WSB denies the allegations as they relate to WSB.

24    137.    Answering paragraph 7.5 of the Complaint, to the extent it is directed toward

25    WSB, WSB denies the allegations as they relate to WSB.

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 14

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

138.    Answering paragraph 7.6 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

139.    Answering paragraph 7.7 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

140.    Answering paragraph 7.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

141.    Answering paragraph 7.9 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

142.    Answering paragraph 7.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

143.    Answering paragraph 7.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

144.    Answering paragraph 7.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

145.    Answering paragraph 7.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

146.    Answering paragraph 7.14 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

147.    Answering paragraph 7.15 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

148.    Answering paragraph 7.16 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    149.    Answering paragraph 7.17 of the Complaint, to the extent it is directed toward

2    WSB, WSB denies the allegations as they relate to WSB.

3    150.    Answering paragraph 7.18 of the Complaint, to the extent it is directed toward

4    WSB, WSB denies the allegations as they relate to WSB.

5

6    151.    Answering paragraph 7.19 of the Complaint, to the extent it is directed toward

7    WSB, WSB denies the allegations as they relate to WSB.

8    152.    Answering paragraph 7.20 of the Complaint, to the extent it is directed toward

9    WSB, WSB denies the allegations as they relate to WSB.

10    153.    Answering paragraph 7.21 of the Complaint, to the extent it is directed toward

11    WSB, WSB denies the allegations as they relate to WSB.

12    154.    Answering paragraph 7.22 of the Complaint, to the extent it is directed toward

13    WSB, WSB denies the allegations as they relate to WSB.

14

15    155.    Answering paragraph 8.1 of the Complaint, to the extent it is directed toward

16    WSB, WSB denies the allegations as they relate to WSB.

17    156.    Answering paragraph 8.2 of the Complaint, to the extent it is directed toward

18    WSB, WSB denies the allegations as they relate to WSB.

19    157.    Answering paragraph 8.3 of the Complaint, to the extent it is directed toward

20    WSB, WSB denies the allegations as they relate to WSB.

21

22    158.    Answering paragraph 8.4 of the Complaint, to the extent it is directed toward

23    WSB, WSB denies the allegations as they relate to WSB.

24    159.    Answering paragraph 8.5 of the Complaint, to the extent it is directed toward

25    WSB, WSB denies the allegations as they relate to WSB.

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 16

N:\CLIENTS\23842\Becker\Answer.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384.

1      160.   Answering paragraph 8.6 of the Complaint, to the extent it is directed toward

2  WSB, WSB denies the allegations as they relate to WSB.

3      161.   Answering paragraph 8.7 of the Complaint, to the extent it is directed toward

4

5  WSB, WSB denies the allegations as they relate to WSB.

6      162.   Answering paragraph 8.8 of the Complaint, to the extent it is directed toward

7  WSB, WSB denies the allegations as they relate to WSB.

8      163.   Answering paragraph 8.9 of the Complaint, to the extent it is directed toward

9  WSB, WSB denies the allegations as they relate to WSB.

10      164.   Answering paragraph 8.10 of the Complaint, to the extent it is directed toward

11  WSB, WSB denies the allegations as they relate to WSB.

12

13      165.   Answering paragraph 8.11 of the Complaint, to the extent it is directed toward

14  WSB, WSB denies the allegations as they relate to WSB.

15      166.   Answering paragraph 8.12 of the Complaint, to the extent it is directed toward

16  WSB, WSB denies the allegations as they relate to WSB.

17      167.   Answering paragraph 8.13 of the Complaint, to the extent it is directed toward

18  WSB, WSB denies the allegations as they relate to WSB.

19

20      168.   Answering paragraph 8.14 of the Complaint, to the extent it is directed toward

21  WSB, WSB denies the allegations as they relate to WSB.

22      169.   Answering paragraph 8.15 of the Complaint, to the extent it is directed toward

23  WSB, WSB denies the allegations as they relate to WSB.

24      170.   Answering paragraph 8.16 of the Complaint, to the extent it is directed toward

25  WSB, WSB denies the allegations as they relate to WSB.

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 17

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    171.    Answering paragraph 8.17 of the Complaint, to the extent it is directed toward

2  WSB, WSB denies the allegations as they relate to WSB.

3    172.    Answering paragraph 8.18 of the Complaint, to the extent it is directed toward

4  WSB, WSB denies the allegations as they relate to WSB.

5

6    173.    Answering paragraph 8.19 of the Complaint, to the extent it is directed toward

7  WSB, WSB denies the allegations as they relate to WSB.

8    174.    Answering paragraph 8.20 of the Complaint, to the extent it is directed toward

9  WSB, WSB denies the allegations as they relate to WSB.

10    175.    Answering paragraph 8.21 of the Complaint, to the extent it is directed toward

11  WSB, WSB denies the allegations as they relate to WSB.

12    176.    Paragraph 9.1 of the Complaint contains legal conclusions to which no answer is

13  required. To the extent it is directed toward WSB and to the extent an answer is required, WSB

14
15  denies the allegations as they relate to WSB.

16    177.    Paragraph 9.2 of the Complaint contains legal conclusions to which no answer is

17  required. To the extent it is directed toward WSB and to the extent an answer is required, WSB

18  denies the allegations as they relate to WSB.

19    178.    Paragraph 9.3 of the Complaint contains legal conclusions to which no answer is

20  required. To the extent it is directed toward WSB and to the extent an answer is required, WSB

21
22  denies the allegations as they relate to WSB.

23    179.    Answering paragraph 9.4 of the Complaint, to the extent it is directed toward

24  WSB, WSB denies the allegations as they relate to WSB.

25    180.    Answering paragraph 9.5 of the Complaint, to the extent it is directed toward

26  WSB, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 18
N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

181.    Answering paragraph 9.6 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

182.    Answering paragraph 9.7 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

183.    Answering paragraph 9.8 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

184.    Answering paragraph 9.9 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

185.    Answering paragraph 9.10 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

186.    Answering paragraph 9.11 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

187.    Answering paragraph 9.12 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

188.    Answering paragraph 9.13 of the Complaint, to the extent it is directed toward WSB, WSB denies the allegations as they relate to WSB.

189.    Paragraph 10.1 of the Complaint contains legal conclusions to which no answer is required.  To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

190.    Paragraph 10.2 of the Complaint contains legal conclusions to which no answer is required.  To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

191.    There are no paragraphs 10.3 or 10.4 in the Complaint

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 19

N:\CLIENTS\23843\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE (206) 623-1900
FACSIMILE: (206) 623-3384

192.    Paragraph 10.5 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

193.    Paragraph 10.6 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

194.    Paragraph 10.7 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

195.    Paragraph 10.8 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

196.    Paragraph 10.9 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

197.    Paragraph 10.10 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

198.    There is no paragraph 10.11 in the Complaint.

199.    Paragraph 10.12 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 20
N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

200. Paragraph 10.13 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

201. There is no paragraph 10.14 in the Complaint.

202. Paragraph 10.15 of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

203. Paragraph 10.17 [sic] of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

204. Paragraph 10.16 [sic] of the Complaint contains legal conclusions to which no answer is required. To the extent it is directed toward WSB and to the extent an answer is required, WSB denies the allegations as they relate to WSB.

205. To the extent not otherwise answered, WSB denies all other allegations in the Complaint as they relate to WSB.

## II.    AFFIRMATIVE DEFENSES

1. Plaintiffs' injuries or damages, if any, may have been caused by the fault of other persons or parties not acting in concert with WSB. Pursuant to RCW 4.22.070, any recovery should be reduced in proportion to the degree of fault attributed to them.

2. Plaintiffs have failed to state a claim upon which relief may be granted.

3. Plaintiffs' claims may be reduced or barred by a failure to mitigate damages.

4. Plaintiffs' claims fail for lack of privity.

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 21

N:\CLIENTS\23547\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    5.    WSB is a separate legal entity.

2    6.    WSB is not a party to any of the contracts or dealings between plaintiffs and

3         Westsound Bank.

4
5    7.    Plaintiffs failed to observe and/or exercise ordinary care and prudence for their

6         own safety and personal well being, such conduct or omission being the sole

7         proximate cause of plaintiffs' injuries or damages. Alternatively, said

8         negligence was a proximate contributing cause of the alleged injuries or

9         damages, if any, and plaintiffs' recovery, if any, must be reduced accordingly.

10   8.    WSB owed no common law or contractual duty to plaintiffs.

11   9.    To the extent plaintiffs claim WSB owed such a duty, which it did not, WSB did

12        not breach these alleged duties and/or complied with the obligations of federal

13
14        regulations.

15   10.   To the extent plaintiffs claim WSB contracted with plaintiffs, which it did not,

16        plaintiffs breached their contracts with WSB

17   11.   RCW 19.36.110.

18   12.   Plaintiffs' claim against WSB may be untimely.

19
20   13.   WSB incorporates by reference the affirmative defenses set forth in the Answer

21        from Westsound Bank.

22   14.   WSB reserves the right to assert such other and further defenses as may become

23        available to it or apparent during the discovery of this matter, and reserves the

24        right to amend its answer to assert any such defenses.

25

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 22
N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    DATED this 6th day of May, 2009.

2                                KELLER ROHRBACK L.L.P.

3

4                                By

5                                   Thomas A. Sterken, WSBA #6965
                                    Benjamin J. Lantz, WSBA #25057
6                                   Attorneys for Defendant
7                                   WSB Financial Group, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 23

N:\CLIENTS\2384\2\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## CERTIFICATE OF SERVICE

2

The undersigned certifies under penalty of perjury under the laws of the State of
3  Washington that on the below date, I caused to be served via US mail, postage prepaid, a true
and correct copy of this document to:

4

Mr. John Phillip Abrams
5  The Abrams Firm
P. O. Box 1494
6  Gig Harbor, WA  98335

7

8        DATED at Seattle, Washington this ___ day of May, 2009.

9

10                                        _____
                                          Megan Johnston

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT WSB FINANCIAL GROUP, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES - 24

N:\CLIENTS\23842\BECKER\ANSWER.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# EXHIBIT G

1

2

3                                                RECEIVED AND FILED
                                                  IN OPEN COURT

                                                    JUL 2 4 2009

4                                                DAVID W. PETERSON
                                                KITSAP COUNTY CLERK

5

6

7   *Court Use only above this line.*

8              IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                      IN AND FOR THE COUNTY OF KITSAP
9

10  BECKER FAMILY BUILDERS CO-
    PLAINTIFFS GROUP,

11                                              NO. 09-2-00662-0
                      Plaintiffs,
                                                **ORDER GRANTING MOTION TO**
12          vs.                                 **SUBSTITUTE FDIC RECEIVER FOR**
                                                **DEFENDANT WESTSOUND BANK**
13  WESTSOUND BANK and WSB FINANCIAL
    GROUP, INC.,

14
                      Defendants.
15

16          THIS MATTER having come on regularly before the Court on FDIC's Motion to

17  Substitute FDIC Receiver for Defendant Westsound Bank, and the Court having considered the

18  files and records herein, the argument of counsel, and otherwise being fully advised in the

19  premises; now, therefore,

20          IT IS HEREBY ORDERED that

21          1.      FDIC's Motion to Substitute FDIC Receiver for Defendant Westsound

22  Bank is GRANTED;

23          2.      FDIC, acting as Receiver, is hereby substituted for Defendant Westsound

24  Bank effective immediately, and succeeds to all rights, titles, powers, and privileges of

25  Westsound Bank in this cause.

26          DONE IN OPEN COURT this ___ day of July, 2009.

[PROPOSED] ORDER GRANTING MOTION TO SUBSTITUTE FDIC              **GARVEY SCHUBERT BARER**
RECEIVER FOR DEFENDANT WESTSOUND BANK - 1                       A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
SEA_DOCS:931257.1 [30351-01900]                                            eleventh floor
07/23/09                                                            121 s.w. morrison street
                                                                 portland, oregon  97204-3141
                                                                         503 228 3939

1
2
3

Honorable _____

4

5    Presented by:

6    GARVEY SCHUBERT BARER

7

8    By _____
     Bruce A. McDermott, WSBA #18988
9    Attorneys for FDIC, acting as Receiver for
     Westsound Bank
10   1191 Second Avenue, 18th Floor
     Seattle, WA 98101
11   206-464-3939

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

[PROPOSED] ORDER GRANTING MOTION TO SUBSTITUTE FDIC
RECEIVER FOR DEFENDANT WESTSOUND BANK - 2
SEA_DOCS:931257.1 [30351-01900]
07/23/09

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eleventh floor
121 s.w. morrison street
portland, oregon 97204-3141
503 228 3939