UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BECKER FAMILY BUILDERS CO-PLAINTIFFS GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for WESTSOUND BANK; and WSB FINANCIAL GROUP, INC.,<br><br>Defendants. | CASE NO. C09-5477RJB<br><br>**ORDER ON DEFENDANT WSB FINANCIAL GROUP INC.'S MOTION FOR SUMMARY JUDGMENT RE: CORPORATE SEPARATENESS** |

This matter comes before the Court on the Defendant WSB Financial Group Inc.'s ("WSB Financial") Motion for Summary Judgment Re: Corporate Separateness. Dkt. 41. The Court has reviewed the pleadings filed regarding the motion and the record herein.

## I.   FACTS AND PROCEDURAL HISTORY

**A.   FACTS**

Plaintiffs are a group of builders who allege that they entered into a series of construction loan contracts with Defendant Westsound Bank. Dkt. 1-3. Plaintiffs allege that Westsound Bank then failed to fulfill its obligations under the loan contracts. *Id.*

Westsound Bank was incorporated in 1998. Dkt. 42, at 5. The Washington State Department of Financial Institutions issued a certificate of authority in 1999, and Westsound

ORDER
Page 1

1  Bank was permitted to "commence the business of a commercial bank." Dkt. 42, at 14.

2  Westsound Bank's deposits were insured by the Federal Deposit Insurance Corporation

3  ("FDIC"). Dkt. 43, at 2. Westsound Bank was supervised by the FDIC and Washington

4  Department of Financial Institutions. Dkt. 43, at 2.

5        In 2005, Defendant WSB Financial was incorporated. Dkt. 42. Defendant WSB

6  Financial was a registered financial holding company. Dkt. 43. WSB Financial is subject to

7  regulation, supervision, and examination by the Federal Reserve Board. Dkt. 43, at 1. WSB

8  Financial was the bank holding company for Defendant Westsound Bank. Dkt. 43, at 1-2. WSB

9  Financial's assets were principally the shares of Westsound Bank, and it was the parent

10 corporation for Westsound Bank. Dkt. 43, at 2. WSB Financial also has to file reports with the

11 United States Securities and Exchange Commission ("SEC"). Dkt. 43. Donald Cox, the

12 President and Chief Executive Officer of WSB Financial, states that WSB Financial "does not

13 currently and has not engaged in the business of originating or servicing loans [or] . . . initiating

14 foreclosure proceedings." Dkt. 43, at 2. Mr. Cox states that "WSB Financial did not originate or

15 service the Beckers' mortgage loans, construction loans, or lines of credit." *Id.* He states that

16 "[a]ny such lending services would have been completed by Westsound Bank - not WSB

17 Financial." *Id.*

18       On May 8, 2009, Defendant Westsound Bank was closed, and the FDIC was appointed as

19 receiver. Dkt. 1-3, at 2. According to Mr. Cox, WSB Financial Group was then "stripped of its

20 wholly owned subsidiary Westsound Bank and all its assets." Dkt. 43, at 2.

21     **B.**    **PROCEDURAL HISTORY**

22       On March 18, 2009, Plaintiffs filed this case in Kitsap County, Washington Superior

23 Court, against Defendants regarding construction loans. Dkt. 1-3, at 9-41. Plaintiffs make

24 claims for negligence, negligent misrepresentation, breach of contract, promissory estoppel,

25 unjust enrichment, and violation of Washington's Consumer Protection Act ("CPA"). Dkt. 1-3,

26 at 36-41. Plaintiffs seeks monetary damages, costs, and attorneys' fees. *Id*.

27     **C.**    **PENDING MOTION**

28

ORDER
Page 2

1    Defendant WSB Financial moves for summary dismissal of Plaintiffs' claims against it, arguing that it is not a proper defendant in this action because it is a separate corporate entity from Westsound Bank. Dkt. 41. WSB Financial argues that was merely a holding company for Westsound Bank. Dkt. 41. WSB Financial argues that a parent corporation, like WSB Financial, is not liable for the alleged wrongful acts or contractual obligations of a subsidiary simply because the parent wholly owns the subsidiary. Dkt. 41.

Plaintiffs do not file a response brief, but instead file two declarations - the declaration of Plaintiff Jerry Becker and declaration of Plaintiffs' counsel, Edward Mueller. Dkts. 55 and 56. Mr. Becker does not allege that WSB Financial originated or serviced any of the subject loans. Mr. Becker states, instead, that he was under the impression that Westsound Bank and WSB Financial were the same entity. Dkt. 55. Mr. Becker states that his belief was based on the fact that David Johnson was the CEO of both WSB Financial and Westsound Bank from 2005 until 2008. Dkt. 55, at 2. Mr. Becker states further that in the fall of 2007, he went to see Mr. Johnson regarding some problems with the loans, and Mr. Johnson was able to solve the problems without delay and without asking anyone permission. Dkt. 55, at 2. Mr. Becker also points to various documents WSB Financial filed with the SEC in which WSB Financial refers to "we" in its discussion of the various banking and lending activities and the fact that WSB Financial consolidated their financial results with Westsound Bank in the reports. Dkts. 55, at 9-14; 55-1; and 55-2. Plaintiffs' counsel also attached a report to his declaration that WSB Financial allegedly filed with the SEC. Dkt. 56.

WSB Financial replies, and argues that Plaintiffs have failed to show that the corporate form should be disregarded and it the claims against it should be dismissed. Dkt. 64.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT - STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

1  law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the
2  nonmoving party fails to make a sufficient showing on an essential element of a claim in the case
3  on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,
4  323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could
5  not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v.*
6  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,
7  significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P.
8  56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence
9  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions
10 of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v.*
11 *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

12       The determination of the existence of a material fact is often a close question. The court
13 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –
14 e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*
15 *Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of
16 the nonmoving party only when the facts specifically attested by that party contradict facts
17 specifically attested by the moving party. The nonmoving party may not merely state that it will
18 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial
19 to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.
20 Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be
21 presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

22       **B.**      **LIABILITY OF WSB FINANCIAL - PIERCING THE CORPORATE VEIL**

23       "It is a general principle of corporate law deeply ingrained in our economic and legal
24 systems that a parent corporation (so-called because of control through ownership of another
25 corporation's stock) is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51,
26 61 (1998)(*internal quotations and citation omitted*). "A corporation exists as an organization
27 distinct from the personality of its shareholders." *Grayson v. Nordic Const. Co., Inc.*, 92
28

Wash.2d 548, 552 (1979). In Washington, "[d]isregarding the corporate form or 'piercing the corporate veil' is an equitable remedy imposed only in exceptional circumstances." *Eagle Pacific Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wash.App. 695, 708 (Wash. App. 1997). Washington recognizes two theories to justify piercing the corporate veil. *Grayson,* at 552-553. The first is that "[t]he corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another." *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wash.2d 403, 409 (1982). Under the second theory, the "alter ego theory," the corporate veil may be pierced where "the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Grayson*, at 553.

                1.     *Corporation Used to Violate or Evade a Duty*

There are two elements that must be satisfied to pierce the corporate veil under this theory:  1) "the corporate form must be intentionally used to violate or evade a duty;" and 2) "disregard must be necessary and required to prevent unjustified loss to the injured party." *Meisel*, at 410 (*internal citations omitted*).

With regard to the first element, an abuse of the corporate form must be found, which typically involves "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment." *Meisel*, at 410. "With regard to the second element, wrongful corporate activities must actually harm the party seeking relief so that disregard is necessary. Intentional misconduct must be the cause of the harm that is avoided by disregard." *Meisel*, at 410.

Considering the record as a whole, Plaintiffs have failed to show an abuse of the corporate form occurred here. Plaintiffs fail to show that the corporate form was intentionally used to violate or evade a duty owed Plaintiffs. There is no showing of "fraud, misrepresentation, or some form of manipulation of the corporation" at Plaintiffs expense. As to the second prong, Plaintiffs must show that the wrongful corporate activities caused their harm.

*Meisel*, at 410. Plaintiffs point to no activity by WSB Financial that caused their harm. Plaintiffs fail to show that even if the SEC filings were in some manner improper, they caused them harm. Plaintiffs fail to meet the second prong.

### 2. *Alter Ego*

Further, Plaintiffs have failed to show sufficient issues of fact as to whether "the corporate entity has been disregarded" by WSB Financial such that there is "such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Grayson*, at 553.

Plaintiffs point out that WSB Financial was the only stock holder in Westsound Bank and that the Board of Directors and officers were the same, or almost the same, in both companies. Dkt. 55. Plaintiffs reason that the companies then, were the same. Dkt. 55. Plaintiffs point to no legal authority to support their position. The fact that WSB Financial was the only stock holder of Westsound Bank is not determinative. A corporation's separate legal identity is not lost merely because all of its stock is held by a single corporation, members of a single family, or by one person. *Grayson*, at 553. Moreover, the fact that all the officers and Board members are identical also not fatal. *Bestfoods*, at 62 (noting a duplication of some or all of the directors or executive officers is not fatal). Plaintiffs note that several of WSB Financial's filings with the SEC reference "we" in regard to banking and lending services and the financial results of both companies were combined. Dkts. 55 and 56. Plaintiffs appear to have taken the position that these statements and consolidation of financial results show that the two companies should be treated as one entity. Plaintiffs again cite no legal authority for this proposition. Other courts considering this issue have noted that:

> The fact that the bank holding company defendants consolidated the financial results of their subsidiaries in publicly filed statements merely reflects compliance with the SEC requirement that corporations consolidate the results of subsidiaries for which they own a 50 percent or more interest in such statements, and is not probative of control for corporate veil piercing purposes.

*McAnaney v. Astoria Financial Corp.*, 665 F.Supp.2d 132, 144, n. 12 (E.D.N.Y. 2009). This reasoning is persuasive.

1       Plaintiffs make no showing that there was such a unity of ownership and interest between
2   the two corporations that the separateness of the corporations ceased to exist.  *Grayson*, at 553.
3   Plaintiffs have failed to show that there are issues of fact as to whether the corporate entity
4   should be disregarded.  Accordingly, WSB Financial's motion to summarily dismiss Plaintiffs'
5   theory of recovery based upon piercing the corporate veil should be granted.
6       Moreover, Plaintiffs point to no other basis for liability against WSB Financial. WSB
7   Financial's motion for summary dismissal of all claims against it (Dkt. 41) should be granted.

### III.   ORDER

It is hereby **ORDERED** that:

- Defendant WSB Financial Group Inc.'s Motion for Summary Judgment Re: Corporate Separateness (Dkt. 41) is **GRANTED**;
- The claims against Defendant WSB Financial, Inc. **ARE DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 14th day of September, 2010.

_____
Robert J. Bryan
United States District Judge