UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BECKER FAMILY BUILDERS CO-PLAINTIFFS GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for WESTSOUND BANK; and WSB FINANCIAL GROUP, INC.,<br><br>Defendants. | CASE NO. C09-5477RJB<br><br>**ORDER ON DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON THE BECKERS, BURLINGAME AND CHRISTMANS' CLAIMS UNDER CR 56(b)** |

This matter comes before the Court on the Defendant Federal Deposit Insurance Corporation's ("FDIC") Motion for Summary Judgment on the Beckers, Burlingame, and Christmans' Claims under CR 56(b). Dkt. 39. The Court has reviewed the pleadings filed regarding the motion and the record herein.

## I.   FACTS AND PROCEDURAL HISTORY

**A.   FACTS**

According to the Complaint, the named Plaintiff Becker Family Builders Co-Plaintiffs Group, consists of Jerry Becker, Mary Ann Becker, JMB Enterprises, ("Beckers"); Richard Sanders, Shelly Sanders, and Sanders Enterprises ("Sanders"); Matthew Templeton, Cher Templeton, and Creative Structures and Design ("Templetons"); Joseph Christman, Kristin

ORDER
Page 1

1  Christman, and JKC Properties LLC ("Christmans"); and Robert Burlingame and Burlingame
2  Construction ("Burlingames"). Dkt. 1-3.

3    Plaintiffs are a group of builders who allege that they entered into a series of construction
4  loan contracts with Defendant Westsound Bank prior to its closure. Dkt. 1-3. Plaintiffs allege
5  that Westsound Bank failed to fulfill its obligations under the loan contracts. *Id.*

6    Plaintiff Jerry Becker states that JMB Enterprises began doing construction loans with
7  Westsound Bank in 1999. Dkt. 83, at 6. Mr. Becker states that the Beckers borrowed at least
8  "20 construction project plans from Westsound Bank and repaid them all," from 1999 to
9  September of 2007. Dkt. 83, at 6. Mr. Becker states that as part of the required loan documents,
10 he completed a "Contractors Breakdown and Progress Draw Request Form." Dkt. 83, at 7. He
11 states that the completed form created the basis for construction draws. Dkt. 83, at 8. Mr.
12 Becker states that up until September of 2007, Westsound Bank processed their draw requests
13 within two days. Dkt. 83, at 8. Mr. Becker alleges that this form was also required for the
14 Christman loans as well. Dkt. 83, at 8.

15   Mr. Becker states that by the end of September 2007, while several homes were in
16 different phases of construction, Westsound Bank stopped paying the construction draws within
17 the two days they usually did, and sometimes paid only a portion of the requested draw. Dkt. 83,
18 at 11-16. Mr. Becker states that, "[b]ecause draws were being processed only once a month at
19 the end of the month that meant that construction could proceed only as fast as the workers could
20 be paid." Dkt. 83, at 13. Mr. Becker also states that he was given verbal promises for several
21 extensions of the loans' due dates, and Westsound failed to prepare the paperwork. Dkt. 83, at
22 17-18.

23   Mr. Becker states that Westsound also improperly seized money from an account for a
24 loan that was allegedly in default. Dkt. 83, at 27.

25   Defendant Westsound Bank's deposits were insured by the FDIC and it was supervised
26 by the FDIC and the Washington Department of Financial Institutions. Dkt. 43, at 2.

27   **B.    PROCEDURAL HISTORY**

28

ORDER
Page 2

1    On March 18, 2009, Plaintiffs filed this case in Kitsap County, Washington Superior
2 Court, against Defendants regarding the construction loans. Dkt. 1-3, at 9-41. Plaintiffs make
3 claims for negligence, negligent misrepresentation, breach of contract, promissory estoppel,
4 unjust enrichment, and violation of Washington's Consumer Protection Act ("CPA"). Dkt. 1-3,
5 at 36-41. Plaintiffs seeks monetary damages, costs, and attorneys' fees. *Id*. Plaintiffs' claim for
6 promissory estoppel was dismissed by the Kitsap County, Washington Superior Court on April
7 24, 2009. Dkt. 1-3, at 47.

8    On May 8, 2009, Defendant Westsound Bank was closed due to its "unsafe or unsound
9 banking practices." Dkt. 1-3, at 2 and 57.

10    On July 24, 2009, the FDIC was substituted as Defendant in this action, appointed as
11 receiver, and succeeded to "all rights, titles, powers, and Westsound Bank in this cause of
12 action." Dkt. 1-3, at 111. The case was removed to this Court on August 4, 2009. Dkt. 1.

13    On September 14, 2010, the FDIC filed a Notice of Settlement as to the Templeton's
14 claims. Dkt. 85. All the Sanders' claims have been dismissed by prior order of this Court. Dkt.
15 87. All Plaintiffs' claims against Defendant WSB Financial have also been dismissed. Dkt. 84.
16 Accordingly, the remaining claims are the Beckers, Christmans, and Burlingames' negligence,
17 negligent misrepresentation, breach of contract, unjust enrichment, and violation of CPA claims
18 against the FDIC.

19    **C.   PENDING MOTION**

20    On July 20, 2010, Defendant FDIC, as receiver for Westsound Bank, filed the instant
21 motion for summary dismissal of all claims filed by the Beckers, Burlingames, and Christmans
22 against it. Dkt. 39. The motion was joined by WSB Financial. Dkts. 44, and 69. The motion
23 was renoted several times, and is now ripe for review. Dkts. 50, 54, 62, and 63.

24    The FDIC argues that the remaining Plaintiffs reliance on unsubstantiated hearsay
25 statements and evidence is misplaced and cannot form the basis of a complaint against the FDIC
26 pursuant to 12 U.S.C. § 1821, et seq. Dkt. 39, at 3-5. The FDIC argues that Washington's
27 economic loss rule bars any recovery for tort claims because the parties here had only a

28

ORDER
Page 3

1  contractual relationship. *Id.*, at 5-6. The FDIC argues that the remaining Plaintiffs have failed to

2  establish a violation of the CPA or that the FDIC was unjustly enriched. *Id*., at 6-8. The FDIC

3  argues that any such claims should be dismissed.

4        Plaintiffs do not file a response brief. Instead, they file a Declaration of Plaintiff Jerry

5  Becker in Opposition to Defendant FDIC's Motion for Summary Judgment against Plaintiffs

6  Becker, Burlingame, and Christman: and Against Plaintiffs Templeton and Sanders. Dkt. 83, at

7  8. Mr. Becker's declaration was filed on September 10,2010, the noting date for the motion, at

8  8:53 p.m. This declaration was filed after the FDIC filed its reply brief, in which the FDIC noted

9  that the Plaintiffs did not file a response. Dkts. 66, 67, and 73.

## II.   DISCUSSION

### A.   TIMING OF PLAINTIFFS' OPPOSITION PAPERS

12        Pursuant to Western District of Washington Local Fed. R. Civ. P. 7(d)(3), opposition

13  papers to a motion for summary judgment are due no later than the Monday before the noting

14  date. Plaintiffs' only opposition papers (the Declaration of Plaintiff Jerry Becker (Dkt. 83)) were

15  filed on the noting date, after the FDIC filed its' reply.

16        The trial date is fast approaching. This motion has been renoted several times. Further

17  briefing from the FDIC, although potentially helpful, is unnecessary in deciding the moiton. In

18  the interest of fully and fairly considering the merits of the case, the Declaration of Plaintiff Jerry

19  Becker (Dkt. 83) shall be considered.

### B.   SUMMARY JUDGMENT - STANDARD

21        Summary judgment is proper only if the pleadings, depositions, answers to

22  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

23  genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

24  law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

25  nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

26  on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

27  323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could

not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### C. PLAINTIFFS' CONTRACT CLAIMS AGAINST THE FDIC and the FINANCIAL INSTITUTIONS REFORM, RECOVERY and ENFORCEMENT ACT

The elements of a breach of contract claim in Washington are: 1) the existence of a valid contract between the parties, 2) breach by the defendant, and 3) damages. *See Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wash.2d 493 (2005). Additionally, because the FDIC, as receiver, is the Defendant, Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") applies. 12 U.S.C. § 1821, *et seq*. Pursuant to FIRREA, 12 U.S.C. § 1823 (e)(1),

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--

ORDER
Page 5

    (A) is in writing,
    (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
    (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
    (D) has been, continuously, from the time of its execution, an official record of the depository institution.

FIRREA further provides, in pertinent part, that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." 12 U.S.C. § 1821 (d)(9).

Defendant FDIC's motion to summarily dismiss any claim based on any agreement which does not comport with 12 U.S.C. § 1823 (e)(1) should be granted and the claim dismissed. It is entirely unclear which of Plaintiffs' claims are allegedly based upon oral promises, because Plaintiffs failed to file a brief in response to the motion. To the extent that Plaintiffs base any of their claims on unwritten agreements, the claims should be dismissed.

Further, to the extent that Plaintiffs are basing their breach of contract claims on the written loan agreements they alleged they had with Westsound, Plaintiffs claims should be dismissed. Plaintiffs have failed to provide a valid written contract. Plaintiffs have made no showing that a provision of a written contract was breached. Plaintiffs have failed to point to any genuine issues of material fact on their breach of contract claims. Their breach of contract claims should be dismissed.

    **D.    WASHINGTON'S ECONOMIC LOSS RULE AND PLAINTIFFS' CLAIMS FOR NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

Washington's "economic loss rule applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 159 Wash.2d 674, 681 (2007). "The rule prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract because tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Id.,* at 682. "The purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses. If the economic loss rule

applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims." *Id.,* at 683. "If the claimed loss is an economic loss, and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies." *Id.,* at 684.

Plaintiffs make no showing that their claimed losses are not economic losses. Plaintiffs make no showing that an exception applies to the economic loss rule. Plaintiffs' tort claims of negligence and negligent misrepresentation should be dismissed pursuant to Washington's economic loss rule.

### E. PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT

In Washington, "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash.2d 477, 484 (2008). The three elements of an unjust enrichment claim are: 1) a benefit conferred upon the defendant by the plaintiff; 2) an appreciation or knowledge by the defendant of the benefit; and 3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Id.*

Defendants' motion for summary dismissal of Plaintiffs' claim for unjust enrichment should be granted. Plaintiffs fail to point to any admissible evidence on any of the three elements of unjust enrichment.

### F. PLAINTIFFS' CLAIMS UNDER THE CPA

In order to maintain a claim for violation of Washington's CPA, a Plaintiff must show: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) which affects the public interest, (4) an injury, and (5) a causal link between the unfair or deceptive act and the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 784-785 (1986).

Plaintiffs have failed to meet their burden on any of the five elements. Plaintiffs have not made a showing of an unfair or deceptive act or practice, in trade or commerce, which affects the public interest, an injury, and a causal link between the unfair or deceptive act and the injury.

*Hangman Ridge,* at 780, 784-785. Moreover, to the extent that Plaintiffs rely on oral promises or agreements to form the basis of their CPA claim against the FDIC, they do not dispute that they are foreclosed by FIRREA's requirements in 12 U.S.C. § 1823 (e)(1).

### G. CONCLUSION

All remaining claims of breach of contract, negligence, negligent misrepresentation, unjust enrichment, and violation of Washington's CPA should be dismissed as discussed above. This case should be dismissed.

### III. ORDER

It is hereby **ORDERED** that:

- Defendant Federal Deposit Insurance Corporation's Motion for Summary Judgment on the Beckers, Burlingame, and Christmans' Claims under CR 56(b) (Dkt. 39) is **GRANTED**;
- The Beckers, Burlingame, and Christmans' claims against Defendant FDIC **ARE DISMISSED**;
- This case is **DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 17th day of September, 2010.

_____
Robert J. Bryan
United States District Judge